Delivered December 12, 1890.

---

## Texas & Pacific Railway Company v. D. A. Miller.

### No. 3259.

1.  **Liability of Railway Companies—Receivers.**—The rule adopted in former decisions adhered to, that appellant is liable for injuries suffered during the late receivership. Railway v. Johnson, 76 Texas, 421, and other cases.

2.  **Carrier of Passengers—Duty.**—The rule imposing upon the carrier of passengers the highest degree of care applies only to the means and measures for safety which the passenger of necessity must trust wholly to the carrier. It is in general applicable only to the period during which the carrier is in a certain sense the bailee of the person of the passenger. Thompson, Carriers of Passengers, 209. See charge in accordance with this principle applied to an injury suffered by a passenger in alighting from cars at a station.

3.  **Duration of Duty of Such Care.**—The transit can not be considered as ended until the passenger has left the car. The carrier's duty continues until the passenger has alighted from the car.

4.  **Charges.**—Where there is no testimony to a part of the plaintiff's allegations it is not error in the court to refuse a charge calling attention to such absence of testimony upon such issue, the court not having noticed it in the general charge.

5.  **Assisting Passenger in Alighting from Car.**—It being the duty of the railway company to exercise the highest degree of care for the safety of its passengers in

alighting from its cars, it is for the jury to determine whether such care included the duty in the particular case of assisting a woman laden with bundles in alighting from the train.

6. **Special Issues.** — It rests with the discretion of the court whether a general verdict shall be taken or one in answer to special issues. A clearly proved abuse of such discretion only would authorize a reversal for the refusal to submit special issues.

7. **Same.**—See special issues held not exhausting the necessary facts, and which were properly refused.

8. **Dismissal of One Defendant.** — A passenger injured in alighting from the train sued the railway company and its conductor. The plaintiff and the conductor were both examined as witnesses, and the interest of each was discussed in the argument to the jury. Upon the jury retiring the plaintiff dismissed as to the conductor. This was not known to counsel for the railway company. There was nothing tending to show that the conductor was made a party for the purpose of affecting his standing as a witness. *Held*, that the railway company could not complain of such dismissal, and it was no ground for a new trial.

APPEAL from Harrison. Tried below before Hon. A. J. Booty.
The opinion contains a sufficient statement.

*H. D. Prendergast*, for appellant.—1. The court erred in charging the jury to find against the Texas & Pacific Railway Company if they found any damages, because the order discharging the receiver makes the property liable only for the payment of judgments rendered in favor of persons who intervene in the cause where the receiver was appointed, and the evidence shows that plaintiff has not intervened in that cause. Godfrey v. Railway, 37 Am. and Eng. Ry. Cases, 9; Railway v. Johnson, 76 Texas, 421. We maintain that the suit against Brown as receiver in December, 1887, was without authority of law, for the reason that Brown was appointed receiver before the Act of Congress of March 3, 1887, took effect. Railway v. Railway, 42 Am. and Eng. Ry. Cases, 34.

2. The court erred in charging that if the train stopped long enough for Mrs. Miller to have gotten off, and she negligently remained on the train until it started and then undertook to get off and was thrown down and injured, then plaintiff can not recover. This was error, because it made it necessary to show both the negligence of plaintiff's wife and defendant's care to entitle the defendant to a verdict.

3. The court erred in charging the jury that "It is the duty of a railroad company to use such foresight in providing for the safety of its passengers as persons of the greatest care and prudence usually use in similar cases." This was error, because such a duty does not rest on a passenger carrier with reference to the length of time they stop at stations for the passengers to alight nor as to the condition of the platform. Railway v. Marian, 27 Am. and Eng. Ry. Cases, 133; Thomp. on Car., 214, 209. The rule referred to is the rule raising a presumption of negligence from the injury. We think in the charge is required too high a degree of care of the defendant under the circumstances of this case.

4.   The court erred in refusing special charge asked by the defendant to the effect that there was no proof that any defect in the platform contributed in any way to the injury to Mrs. Miller, and therefore they could not find any damages on account of the condition of the platform. Railway v. Wisenor, 66 Texas, 675; Tel. Co. v. Kenzora, 77 Texas, 258.

5.   The court erred in refusing special charge asked by the defendant to the effect that there was no duty resting on the defendant to assist Mrs. Miller in alighting from the car, unless she was under some disability or infirmity and the employes of defendant knew that she needed assistance. Raben v. Railway, 31 Am. and Eng. Ry. Cases, 49; Lafflin v. Buffalo Railway, 30 Am. and Eng. Ry. Cases, 599; Raben v. Railway, 33 Am. and Eng. Ry. Cases, 521.

All the authorities hold that the need of assistance must be brought to the attention of the carrier before he would be liable for not rendering such assistance.   And the Supreme Court of Mississippi holds that even then the assistance is due merely as a courtesy and not as a duty.   Railway v. Statham, 42 Miss., 607; Thomp. on Car., p. 270; Patt. Ry. Acc. Law, sec. 278.

The true rule is that common carriers of passengers are not nurses—they do not undertake to load and unload their freight as do carriers of goods—and that it is the duty of a traveler to provide himself with such assistance as he needs.   2 Wood's Ry. Law, p. 1140.

6.   The court erred in refusing special charges asked by defendant to the effect that the jury should state in their verdict the length of time the train stopped at Woodlawn and the length of time that would have been a reasonable time for Mrs. Miller to have gotten off. Rev. Stats., art. 1333; Graves v. Campbell, 74 Texas, 576.

7.   The court erred in not granting a new trial, because during the trial and argument plaintiff demanded a judgment against the witness Proud, who was also a defendant, and after argument plaintiff dismissed as to defendant Proud and did not inform defendant of the fact.

*James Turner,* for appellee.

STAYTON, Chief Justice.— Plaintiff sues to recover damages for injury done to his wife, alleged to have been caused by the negligence of servants of receivers then in charge of appellant's railway, whereby she was injured in alighting from a train.

A judgment for $2500 was rendered for the plaintiff, and there is no claim that this is excessive; but it is urged that the court should have granted a new trial on the ground that the weight of the evidence showed that the train remained at the station where plaintiff's wife was to leave it a sufficient length of time for her to have alighted with safety; and

further, because no negligence on the part of the persons operating the train was shown.

The evidence was conflicting as to the time the train stopped at the place plaintiff's wife was to leave it, but all tends to show that she was injured by a fall caused by the starting of the train while she was alighting, and that in this she had no assistance from any servant of the receivers.

Her own statement shows that she had several bundles, and started to leave the train as soon after it stopped as she could while thus encumbered, and that while she was alighting the train started suddenly and threw her down, inflicting thereby serious injury.

So standing the evidence, we are not authorized to reverse the judgment on account of the ruling of the trial judge on the motion for new trial. Substantially the same facts, to fix liability on appellant for an injury inflicted while its road was in the hands of receivers, are shown as was in the case of Railway v. Johnson, 76 Texas, 421, and in several other cases, and the same defenses were urged against liability and against the right of plaintiff to maintain this action or any other save in the court that appointed the receivers, whom it had long before discharged, and all property in their hands returned to appellant.

The assignments of error relating to the rulings on these defenses have been fully considered in cases heretofore decided, and need not be further discussed.

The court instructed the jury as follows: "If you believe from the evidence that on the arrival of the train on which Mrs. Miller was a passenger at Woodlawn that she used reasonable diligence, circumstanced and conditioned as she was, to get off said train, and that the train did not stop a sufficient length of time to enable her to alight from the same in safety, and that while she was endeavoring to get off, the train started with a jerk and caused her to fall, and in said fall she was, without failure on her part to use ordinary or reasonable care for her own safety, injured, then you will find for the plaintiff.

"You are further instructed that if the train did not stop long enough at Woodlawn to enable Mrs. Miller in her condition and circumstances to get off in safety, and when she was trying to get off the train the train started, and while it was moving she undertook to get off and was injured, and in so trying to get off a moving train was herself guilty of a want of ordinary care, as defined to you hereinafter, then you will find for the defendant."

These charges having been given in connection with one which was as follows: "If the train stopped long enough for Mrs. Miller to have gotten off safely, circumstanced and conditioned as she was, and she failed to use reasonable diligence to get off, and unnecessarily and negligently remained upon the train till it started and then undertook to get off and

was thrown down and hurt, then the plaintiff cannot recover," it is urged that it was error to give this last charge, "because it made it necessary to show both the negligence of plaintiff's wife and defendant's care to entitle defendant to a verdict." We do not think the charge susceptible of such a construction.

The jury would rather have understood from that charge, considered alone, that plaintiff would not be entitled to recover if his wife did not use reasonable diligence to leave the train, if it stopped a sufficient length of time to have enabled her to do so safely, without reference to any other fact than that the train was in motion when she attempted to leave it; and looking to all the charges quoted, there is not the least reason to believe that the jury were misled in any respect hurtful to appellant.

The court, after instructing the jury that it was the duty of persons operating a railway train to stop at stations long enough for passengers to alight in safety, and that it was the duty of passengers to use that time with reasonable diligence, instructed that "It is the duty of a railway company to use such means and foresight in providing for the safety of passengers as persons of the greatest care and prudence usually use in similar cases," which it is claimed was erroneous, "because such a duty does not rest on a passenger carrier with reference to the length of time they stop at stations for the passengers to alight, nor as to the condition of the platform."

In support of this proposition counsel quotes from the case of Railway v. Marion, 27 American and English Railway Cases, 132, the following:

"It is only in respect to these accidents which happen to the passenger while he trusts himself to the safety of the carrier's means of transportation, or to the skill, diligence, and care of his servants, that the rule applies. * · * * It does not apply where the occasion of the hurt of the passenger was an active, voluntary movement on his part, combined with some alleged deficiency in the carrier's means of transportation or accommodations; and the reason is that in such a case it is necessary to consider whether there may not have been contributory negligence on the part of the passenger."

This language was used in discussing the sufficiency of facts stated to raise a presumption of negligence in a case in which a passenger who attempted to alight from a moving train was basing his right to recover on the ground that a railway platform was defective.

It is said by an elementary writer that "The rule imposing upon the carrier of passengers the highest degree of care has this limitation—it applies only to those means and measures of safety which the passenger of necessity must trust wholly to the carrier. It is in general applicable only to the period during which the carrier is in a certain sense the bailee of the person of the passenger." Thomp. on Car. of Pass., 209.

The rule thus stated seems reasonable, and under it we believe the charge of the court was correct, in view of the facts of the case.

The injury occurred on account of the movement of the train before Mrs. Miller alighted, and we are of opinion that in reference to the movement of a train at a station, as well as on the journey, the degree of care declared by the charge is required of all passenger carriers; for over such movement the passenger has no more control in the one case than in the other, and must trust wholly to the carrier, as does he when sitting in a car as to the rate of speed or any other matter affecting his safety. The transit can not be considered ended until the passenger has left the car; but while this is so, the liability of the carrier, even in a case in which he has not used the proper degree of care, may be defeated by the contributory negligence of the passenger.

While the petition in this case alleged that the "platform at Woodlawn was not safe and long enough for the purpose for which it was built, * * * and that there was no platform by the step where his said wife got off said train," there was no evidence showing that the platform was in any respect defective, but there was evidence from which it might be inferred that the steps of the car were just beyond its end.

The charge of the court made no reference to a possible liability on account of any defect in the platform, but appellant asked a charge to the effect that there was no evidence of any defect in the platform, and that no verdict could be found in favor of plaintiff on account of its condition. The refusal to give this charge is assigned as error.

It has been frequently ruled that the giving of a charge upon a state of facts there was no evidence tending to show the existence of was erroneous because misleading; but it has never been held that the refusal to give a charge to the effect that there was no evidence tending to show a given state of facts was ground for reversal.

The court refused to give the following instruction: "The jury are charged that there was no duty resting on the defendant's servants in charge of said train to assist Mrs. Miller from the train, unless she shows that from disability or infirmity on her part she was unable to get off readily without assistance. She must show also that the employes in charge of the train knew of such disability or infirmity before plaintiff can recover on account of any negligence of the defendant in not having some person there to assist Mrs. Miller off."

The court had instructed the jury as follows: "Whether or not the failure to assist Mrs. Miller in getting off the train on the part of the persons in charge of said train was a want of that measure of care which the employes of said receivers owed to her as a passenger, you will determine from all the circumstances, taking into consideration the failure on her part to ask for such assistance."

The evidence showed that Mrs. Miller attempted to alight from the car

at the proper place, and that some of the employes assisted or attempted to assist her.

The conductor stated that it was the duty of the brakeman to assist passengers to enter and leave the train, and that this was also the duty of the porter as to persons who were at the proper place, or when requested. The testimony of the porter was to the same effect.

There are cases that seem to hold as matter of law that no duty rests upon carriers of passengers by rail to assist persons entering or getting off their cars. Raben v. Railway, 31 Am. and Eng. Ry. Cases, 49; Raben v. Railway, 33 Am. and Eng. Ry. Cases, 520; Railway v. Stratham, 42 Miss., 614.

A contrary ruling seems to have been made in Railway v. Hendricks, 41 Indiana, 69, and in Railway v. Hendricks, 26 Indiana, 232.

Railway v. Wortham, 73 Texas, 27, was a case in which a female passenger was injured while alighting from a car on account of an unsafe foot rest between the lower step of the car and the ground; and while declining to say that it was the duty of employes of the carrier to give assistance to persons entering or leaving a train if proper means for doing this with safety were furnished, it was said that the carrier "owed her the duty of providing not only a reasonably safe appliance for enabling her to alight in order to make the transfer, but the safest that had been known and tested."

As already said, the degree of care necessary to be exercised by the carrier was correctly stated in the charge of the court in view of the facts of the case, and whether to constitute this degree of care it was necessary that employes of the carrier should have assisted Mrs. Miller to alight from the train was properly and correctly submitted to the jury in the charge given.

To have given the charge requested by appellant would have been erroneous, and an assumption on the part of the court to decide a mixed question of law and fact.

Appellant requested the court to submit to the jury two special issues which only required answers to the questions, How long did the train stop at Woodlawn? What would have been a reasonable time for Mrs. Miller to get off the car after the train stopped?

The court refused to submit them.

The statute provides that "the jury shall render a general or special verdict, as may be directed by the court, and the verdict shall comprehend the whole issue or all the issues submitted to them." Rev. Stats., art. 1333.

It rests in the discretion of the court whether a general verdict shall be taken or one in answer to special issues; and if this be a matter that this court would revise, it would require a showing that this discretion had been clearly abused to justify a reversal of a judgment on the ground that the court had refused to submit special issues.

If special issues are submitted they should be such that upon proper answers to them the court could properly render a judgment. If the two issues presented by the charges asked had been submitted and answered most favorably to appellant under the issues of·fact in the case, no judgment could properly have been rendered; and if answered adversely to appellant would have been insufficient to have authorized any judgment for appellee.

The conductor in charge of the train when Mrs. Miller was injured was made a defendant, and testified in behalf of appellant and himself, and Mrs. Miller was a witness in behalf of plaintiff.

During the argument before the jury counsel for appellant was insisting that Mrs. Miller was an interested witness, and therefore not entitled to such credit as she would otherwise be, and that witnesses for appellant were disinterested and therefore entitled to credence, when counsel assisting leading counsel for the plaintiff remarked that the conductor was an interested witness, being a defendant against whom a judgment was sought.

After the close of the argument, without the knowledge of counsel for appellant, the case was discontinued as to the conductor by leading counsel sel for the plaintiff, and this fact seems not to have come to the knowledge of appellant's counsel until many days after the trial, when an amended motion for new trial was made on account of the facts herein stated.

It is urged that the court should have granted it.

It was the right of plaintiff to make the conductor a party, and to dismiss as to him at any time before the jury retired.    The facts do not show that he was made a defendant for the purpose of weakening the effect of his evidence should he be offered as a witness for the defendant.

If counsel had been informed of the dismissal of the case as to him this could not in any manner have affected the question of his credibility in so far as that might be affected by his interest in the action, for his testimony would be considered in the light of his relation to the case at the time he testified and not as it subsequently was.·

No error is found in the proceedings that led to the judgment, and it will be affirmed.

*Affirmed.*

Delivered December 12, 1890.