CITIZENS' RY. CO. v. FARLEY.†

(Court of Civil Appeals of Texas.  March 22, 1911.  Rehearing Denied April 12, 1911.)

1. NEGLIGENCE (§ 59*)—PROXIMATE CAUSE.

A wrongdoer is liable for all injuries resulting directly from the wrongful act, whether they could or could not have been foreseen by

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes.

† Writ of error denied by Supreme Court.

him, provided he, according to common experience and the usual course of events, might reasonably have anticipated such injuries.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 72; Dec. Dig. § 59.*]

2. CARRIERS (§ 305*)—INJURIES TO PASSENGERS—PROXIMATE CAUSE.

A mother with a child in her arms signaled a street car to stop, and on the car stopping she placed the child on the platform and was in the act of boarding the car when it suddenly started, leaving her. The conductor was immediately notified of the fact, but he made no attempt to permit the mother to reach the car. The mother became frantic, and in her efforts to recover the child exposed herself to a rain storm. *Held*, that the negligence of the carmen in separating the mother from her child was the natural and probable cause of the injuries resulting to the mother from mental strain and shock, and her exposure to the weather, since such injuries should have been foreseen and anticipated by them.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1245; Dec. Dig. § 305.*]

3. CARRIERS (§ 247*)—STREET RAILROADS—PASSENGERS—WHO ARE.

The mother was a passenger entitled to the high degree of care necessary on the part of the carrier to protect its passengers from injury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 988, 989; Dec. Dig. § 247.*]

4. CARRIERS (§ 287*)—STREET CARS—RIGHTS OF PASSENGERS.

A street railway company is under the absolute duty to stop its cars a reasonable length of time to allow passengers to board them.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1159; Dec. Dig. § 287.*]

5. APPEAL AND ERROR (§ 1033*)—HARMLESS ERROR—ERRONEOUS INSTRUCTIONS.

The error, if any, in a charge that a street railway company must exercise the highest degree of care to stop its cars for a reasonable time to allow passengers to board them, arising from the fact that the company is under an absolute duty so to do, is in favor of the company, and it cannot on appeal complain thereof.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4056–4058; Dec. Dig. § 1033.*]

6. EVIDENCE (§ 123*)—RES GESTÆ.

In an action against a street railway company for failing to stop its car long enough to enable a female passenger to board it, evidence that, as the car left the place where it had stopped to permit the passenger to board it, some one stated to the conductor: "Stop the car! You have left a lady"—was admissible as a part of the res gestæ.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 351–368; Dec. Dig. § 123.*]

Appeal from District Court, McLennan County; Marshall Surratt, Judge.

Action by R. F. Farley against the Citizens' Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Clark, Yantis & Clark, for appellant. John W. Davis, for appellee.

RICE, J. This suit was brought by appellee against appellant for the recovery of damages alleged to have been sustained by plaintiff's wife on the 8th of October, 1909, resulting from an attempt to board one of appellant's street cars. On said evening plaintiff's wife, with her child of tender years, while standing at the corner of Fourth and Webster streets in the city of Waco, and desiring to take passage on one of appellant's cars passing down Fourth street, signaled the car to stop, which was done in response thereto. Whereupon plaintiff's wife, with her babe in arms, attempted to board the same, and after putting the child on the rear platform, and while in the attempt of getting on herself, the car started, moving rapidly away down the street, thereby separating her from her child. She followed after the car in an effort to overtake the same; but, being unable to do so, conceived the idea of intercepting the car (it being a belt line) on Eighth street, and went immediately to said point for this purpose; but on reaching there she was informed by the motorman on the first car that her child was not on said car. She then waited for the next car, but upon its arrival ascertained that her child was not on it, and, being unable to get any tidings from it, she boarded this car and went to the transfer station of the company, where, after vainly searching for her child, she received a telephone message that the child was at Mrs. Fairley's on Fourth street, the place she had been visiting during the evening, to which place it had been brought by a passenger who disembarked from the car for this purpose, but of which fact she was not apprised until after her return to Mrs. Fairley's. At the time she undertook to board the car a rain storm was brewing, and before she reached Eighth street it began raining, and a heavy rain continued to fall, flooding the streets, to which she was exposed for some two hours, in her efforts to recover her child. She was greatly alarmed and frightened and suffered great mental anguish on account of being separated from her child, which resulted in a very serious nervous attack and breakdown, from which she was confined to her bed for a time, and, although she has received competent medical treatment, still suffers therefrom; that prior to the time of the alleged injury she had enjoyed good health.

It appears that the car did not stop a reasonable time for her to board the same, notwithstanding there was no delay on her part in attempting to do so; and it was shown that the conductor was not on the rear platform of the car where he could have assisted her in boarding the same, but during the entire time of the stop remained inside of the car, and that though, after starting, his attention was called to the fact that he had left a lady and separated her from her baby, did not stop or return for her; but, after going some three or four blocks, merely acquiesced in the suggestion of a passenger that if he would stop he would take the baby to its mother, which was done, the pas-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

senger's fare being returned to him. All of these facts were set up in plaintiff's petition. The defendant answered by general and special exception, general denial, and a special plea to the effect that, when plaintiff's wife attempted to board the car, the employés in charge thereof stopped the same a reasonable length of time, sufficient to enable plaintiff's wife to board the same, together with her child, and that her failure to do so was caused by her contributory negligence in failing to exercise ordinary care to board the same before it started. There was a jury trial, resulting in a verdict and judgment in behalf of plaintiff in the sum of $2,000, from which this appeal is prosecuted.

In their first assignment of error appellants insist that the court erred in overruling their motion for new trial, because the verdict was contrary to law and not supported by the evidence, in that it appears from the undisputed testimony that the damages suffered by plaintiff's wife, by reason of the exposure to the elements, was caused by an intervening agency that could not, in the light of attending circumstances, have been reasonably foreseen or guarded against by defendant's agents or employés. The principal question for consideration here is whether or not the alleged negligent act or omission of the defendant in failing to stop a sufficient length of time for plaintiff's wife to board the car was the proximate cause of the injury. It is said in 13 Cyc. p. 25: "A proximate loss or injury is usually a consequential loss or injury, but it is one so nearly connected with the original wrong that the law concerns itself to award damages therefor. It is a fundamental principle of law, applicable alike to breaches of contract and to torts, that in order to found a right of action there must be a wrongful act done and a loss resulting from that wrongful act; the wrongful act must be the act of the defendant, and the injury suffered by the plaintiff must be the natural and not merely a remote consequence of the defendant's act."

It is further said, in the same volume, p. 27: "The question as to what damages will be considered the natural and proximate consequence of the injury and what damages will be considered remote is one difficult of decision. It may be stated, as a general rule, however, that where the result of an unlawful act is a natural one, and one that would naturally flow from the act done, it is not remote but proximate. If, upon the contrary, the damages complained of would not naturally or usually flow from the negligent act, but were brought about by some unforeseen casualty, then they would be remote. Within the rule which limits a recovery for injury to those damages which are its natural and proximate effects, the natural effects are those which might reasonably be foreseen, those which occur in the ordinary state of things, and proximate effects are those between which and the injury there intervenes no culpable and efficient agency The matter is usually one of evidence which should be left to the decision of the jury. [1] The general rule in actions for tort is that the wrongdoer is liable for all injuries resulting directly from the wrongful acts, whether they could or could not have been foreseen by him, provided the particular damages in respect to which he proceeds are the legal and natural consequences of the wrongful act imputed to the defendant, and are such as, according to common experience and the usual course of events, might reasonably have been anticipated. Remote, speculative, or contingent damages will not be considered in conformity to the general rule above laid down. To render a wrongdoer liable in damages where the connection is not immediate between the injurious act and the consequence, such nearness in the order of events and closeness in the relation of cause and effect must subsist, as that the influence of the injurious act will predominate over that of other causes, and concur to produce the consequence, or be traceable to those causes."

In discussing this rule, Mr. Hutchison on Carriers (volume 3, § 1429) says: "Where, therefore, the carrier has wrongfully set the passenger down short of his destination, or has carried him beyond it, and has thereby imposed upon him the necessity of getting to his destination by other means, the carrier must respond whether the action be brought for the breach of the contract or for the tort, if the passenger, while in the exercise of reasonable care and prudence for his safety, has received an injury while seeking to extricate himself from the situation in which the carrier has thus wrongfully placed him. Thus where a man, with his wife and child, were passengers to M., were told by a brakeman that they had reached that place and to get out, when in fact they were three miles distant, and they were set down in the nighttime at a place where they could find no shelter, and therefore walked to their destination exposed to the weather, which had been rainy, thereby causing serious illness of the wife, the carrier was held liable. So where the carrier neglected to stop at the passenger's destination, and carried her five miles beyond and put her off, saying that she would there find a conveyance back, which was not furnished, and she therefore walked for three hours on a hot sultry afternoon, crossing streams, climbing fences, and pursued and frightened by dogs, all of which brought on a siege of illness, the carrier was held liable. So the carrier has been held liable to the passenger for sickness caused by willful delay; by unjustifiable detention and exposure to an unhealthy climate; for injury to health caused by exposure to the weather after having been wrongfully expelled from the train; for bodily suffering caused by being compelled to walk back to his destination after being neg-

ligently carried beyond it; for sickness and suffering caused by failing to stop at a regular and advertised landing place, and thereby leaving passengers exposed all night to the weather; for an injury sustained in getting back to the station after having been wrongfully ejected," etc.

Appellee admits that the law, as announced by the courts of this state, to the effect that where the physical injury results from fright, or other mental shock, caused by the wrongful act or omission of another, the injured party is only entitled to recover damages where the act or omission is the proximate cause of the injury, and, in the light of all the circumstances, ought to have been foreseen as a natural and probable consequence thereof, but contends that the facts of this case bring it within the rule announced, and we agree with this contention. It is held in Gulf, Colorado & Santa Fé Ry. Co. v. Hayter, 93 Tex. 239, 54 S. W. 944, 47 L. R. A. 325, 77 Am. St. Rep. 856, as shown by the syllabus, that: "Though there can be no recovery for mere fright, neither attended nor followed by any other injury, where a physical injury results from a fright or other mental shock caused by the wrongful act or omission of another, the injured party is entitled to recover his damages, provided the act or omission is the proximate cause of the injury, and the injury ought, in the light of all the circumstances, to have been foreseen as a natural and probable consequence thereof; these being questions for the jury."

In Hill v. Kimball, 76 Tex. 210, 13 S. W. 59, 7 L. R. A. 618, where a suit was brought by the plaintiff to recover damages to his wife who had miscarried on account of an assault made by the defendant on some negroes near the residence of his wife, it was held, notwithstanding the fact that no direct personal injury was done to the wife, yet, the miscarriage being traced to the fright occasioned by the wrongful act of the defendant in making the assault, that he was liable, Justice Gaines saying, among other things in delivering the opinion: "That a physical personal injury may be produced through a strong emotion of the mind there can be no doubt. The fact that it is more difficult to produce such an injury through the operation of the mind than by direct physical means affords no sufficient ground for refusing compensation in an action at law when the injury is intentionally inflicted. It may be more difficult to prove the connection between the alleged cause and the injury; but if it be proved, and the injury be the proximate result of the cause, we cannot say that a recovery should not be had. Probably an action will not lie when there is no injury except the suffering of the fright itself; but such is not the present case. Here, according to the allegations in the petition, the defendant has produced a bodily injury by means of that emotion, and

136 S.W.—7

it is for that injury that the recovery is sought. If in his assault upon the negroes he had discharged a missile at one of them, and it had missed its aim and had struck Mrs. Hill and produced a miscarriage, there is no doubt that he would be liable to an action, and it seems to us he should be equally held liable for the same result produced by the same conduct, except that in the one case the means of the injury is a material substance and in the other a mental emotion."

[2] In the case at bar it clearly appears from the evidence that the plaintiff's wife, after signaling the car to stop, had placed her child upon the platform, and was in the act of boarding the car when it suddenly started, leaving her in the street. The conductor was immediately apprised of the fact that he had left her, and also of the fact that the child was on board the car, and, with this knowledge, failed to stop. The evidence shows that the mother became frantic, as it was natural that she should under such circumstances, and in her efforts to recover her child exposed herself to the storm, unmindful of the falling rain, by which she was thoroughly drenched. It appears that the great mental strain and shock, together with her exposure to the weather, brought on a serious nervous attack, from which she has never recovered, and from which, according to the evidence, she may never fully recover. It seems to us that the negligence of the defendant in thus leaving her in the street and separating her from her child must be regarded as the natural and probable cause of the injury complained of; and this, we think, should have been foreseen and anticipated by the defendant. The servants of appellant might have anticipated that the mother would have undertaken to regain her child, notwithstanding the fact she may have been compelled to expose herself to the rain in order to do so; and it is no defense to assert that her effort to regain the child, under the circumstances, which resulted in injury to herself, would be a bar to her recovery of damages on account of their own negligence. [3] Mrs. Farley, under the circumstances, it seems to us, had become a passenger, and was entitled to that high degree of care necessary on the part of a carrier to protect its passenger from injury. See Moore on Carriers, pp. 546, 547; Ganiard v. Rochester City R. R. Co., 50 Hun, 22, 2 N. Y. Supp. 470, affirmed in 121 N. Y. 661, 24 N. E. 1092; Gaffney v. St. Paul City Ry. Co., 81 Minn. 459, 84 N. W. 304; Gordon v. West E. St. Ry. Co., 175 Mass. 181, 55 N. E. 990; McDonough v. Metropolitan R. C., 137 Mass. 210; Davey v. Greenfield St. Ry., 177 Mass. 106, 58 N. E. 172; Warren v. Railroad Co., 8 Allen, 227, 85 Am. Dec. 700; Citizens' St. Ry. Co. v. Merl, 26 Ind. App. 284, 59 N. E. 491; Brien v. Bennett, 8 Car. & P. 724 (34 E. C. L. 603) English case; 6 Cyc. 595. For

which reasons we overrule this assignment.

We overrule appellant's second assignment, asserting that the court erred in not granting its motion for new trial, on the ground that the undisputed evidence showed that the plaintiff's wife was guilty of contributory negligence in exposing herself to the weather, because this issue was submitted to the jury under an appropriate charge, who found against appellant's contention.

We overrule the third and fourth assignments of error, because we believe the petition was not open to the objections urged by the special or general demurrers assailing it.

The court gave the following charge to the jury, which is the subject of appellant's fifth assignment of error: "After the defendant's car stopped on this occasion at the corner of Fourth and Webster streets, it was its duty to exercise the highest degree of care—that is, such care as a very cautious and prudent person would exercise under the same or similar circumstances—to allow said car to remain standing a reasonable length of time, and only a reasonable length of time, for all parties who were there intending to board said car to get thereon before starting the same, and a failure, if any, by the defendant, to exercise such care to keep said car standing after it stopped such reasonable length of time, would be negligence upon its part, and if plaintiff's said wife was prevented from boarding said car and received the injuries complained of as a direct and proximate result of such negligence, if any, it would be liable therefor, unless the plaintiff's said wife was guilty of negligence in not exercising ordinary care to board said car while it was standing." It is urged, among other reasons, that said charge is erroneous in that it required defendant to exercise the highest degree of care to keep its car standing only a reasonable time, and was calculated to confuse the minds of the jury. We do not believe there was any error in this charge. Appellant was not merely required to exercise the highest degree of care to stop its cars for a reasonable length of time to allow passengers to board the same, [4] but it was its absolute duty to do so. [5] This being true, if there was any error at all in the charge, it was in favor of appellant and against appellee. We therefore overrule this assignment. Besides this, plaintiff's wife, after putting the child upon the platform, and grasping the handhold, it seems to us, became and was a passenger to whom the railway company owed the highest degree of care to prevent other injury, or separating her from her child. See T. & P. Ry. Co. v. Miller, 79 Tex. 83, 15 S. W. 265 (11 L. R. A. 395, 23 Am. St. Rep. 308), wherein it is said: "We are of opinion that, in reference to the movement of a train at a station, as well as on the journey, the degree of care declared by the charge is required of all passenger carriers; for over such movement the passenger has no more control in the one case than in the other, and must trust wholly to the carrier, as he does when sitting in a car as to the rate of speed or any other matter affecting his safety."

[6] There was no error in allowing a witness to testify that as the car was leaving the corner where it had stopped that some-one hallooed to the conductor: "Stop the car! You have left a lady." This was res gestæ of the occurrence and was properly admissible.

We have considered the remaining assignments, but regard them as not well taken, and therefore overrule the same.

Finding no error in the record, the judgment of the court below is affirmed.

Affirmed.