GALVESTON, H. & S. A. RY. CO. v. WILLIAMS. (No. 487.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 19, 1919. Rehearing Denied Jan. 7, 1920.)

1. CARRIERS ☞318(11)—NEGLIGENCE OF RAILROAD IN NOT PROVIDING SAFE PLACE TO ALIGHT ESTABLISHED.

In action by plaintiff passenger for injuries sustained when stepping from lower step of passenger coach to platform, as result of her foot catching on the edge of a board or box covering certain wires or switching apparatus running along the platform just beneath the lower step of the coach, evidence *held* to warrant jury finding that defendant was negligent, and that its negligence was the proximate cause of the injury.

2. CARRIERS ☞346(3)—PLAINTIFF INJURED WHILE ALIGHTING NOT GUILTY OF CONTRIBUTORY NEGLIGENCE.

In action by plaintiff passenger for injuries sustained when stepping from lower step of passenger coach to platform, as result of her foot catching on the edge of a board or box covering certain wires or switching apparatus running along the platform just beneath the lower step of the coach, *held* jury was warranted in finding that plaintiff was not guilty of contributory negligence.

3. CARRIERS ☞315(4)—NO VARIANCE BETWEEN ALLEGED CAUSE OF INJURY TO PASSENGER AND PROOF.

In action by plaintiff passenger for injuries sustained when stepping from lower step of passenger coach to platform, as result of her foot catching on the edge of a board or box covering certain wires or switching apparatus running along the platform just beneath the lower step of the coach, *held* there was no fatal variance between plaintiff's pleading regarding the cause of her injury and the proof adduced in support thereof.

4. APPEAL AND ERROR ☞882(14)—ONE REQUESTING SPECIAL ISSUE CANNOT COMPLAIN THEREOF.

Contention that trial court erred in submitting special issues Nos. 1 and 2, for the reason that such issues were in conflict with special issue No. 3, cannot be sustained, issue No. 3

being identical with issue No. 2, requested by appellant.

5. TRIAL ☞350(3)—REFUSAL TO SUBMIT SPECIAL ISSUE AS TO SINGLE ITEM OF DAMAGE PROPER.

Though evidence raised issue whether condition of plaintiff's legs below her knees was caused by injury sustained in alighting from defendant's train, there was no error in refusing to submit such issue where condition of plaintiff's legs was not the only injury complained of.

6. TRIAL ☞350(2)—ISSUE INVOLVING INCIDENTAL MATTER NEED NOT BE SUBMITTED.

Where a case is submitted on special issues, the trial court is not required to submit questions which involve merely a decision upon evidentiary facts, or from issue merely incidental to the material issues by which the controversy must be determined.

Appeal from District Court, Harris County; K. C. Barkley, Judge.

Action by Emily Belle Williams against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, and McMeans, Garrison & Pollard, all of Houston, for appellant.

Gill, Jones, Tyler & Potter, of Houston, for appellee.

HIGHTOWER, C. J. This is the second time this case has reached this court. The disposition of the former appeal will be found in 196 S. W. 309. The record on this appeal discloses no change in the pleadings of the parties and the evidence adduced upon the trial from which this appeal comes appears to be substantially the same as upon the former trial. We refer to the report of the case on the former appeal, as above indicated, for a full understanding of the pleadings and contentions of the parties.

The case on the last trial was tried with a jury, and was submitted upon special issues, they being as follows:

Special Issue No. 1: "Did the placing or permitting to remain of the box covering the switching apparatus on the platform, at the time and place in question and under the circumstances at the time of the accident, if any, constitute 'negligence' as that term has been defined herein?"

This question was answered by the jury in the affirmative.

Special Issue No. 2: "Was the placing or permitting to remain of the box covering the switching apparatus on the platform, at the time and place in question and under the circumstances, the proximate cause of the plaintiff's injury, if any?"

This question the jury answered in the affirmative.

Special Issue No. 3: "Was the place where plaintiff attempted to alight from the train of the defendant company at Seabrook in a reasonably safe condition for her to alight in safety by the exercise of ordinary care?"

To this question the jury answered in the negative.

Special Issue No. 4: "Was the plaintiff guilty of contributory negligence? * * *"

To this question the jury answered, "No."

Special Issue No. 5: "What sum of money, if paid plaintiff at this time, will fairly and justly compensate her for the injuries she sustained on September 7, 1914, if any? * * *"

To this question the jury answered, "$5,-000.00."

By its first assignment of error appellant complains of the trial court's refusal to peremptorily instruct a verdict in its favor. There are four propositions urged under this assignment as reasons why the peremptory instruction should have been given. They may be substantially stated as follows:

Because no actionable negligence upon the part of appellant was shown by the evidence; and because the evidence showed, to such a degree as to render any other conclusion wrong, that appellee's injuries were not the result of any actionable negligence on the part of appellant; and because the undisputed evidence established, to such a degree as to render any other conclusion wrong, that the appellee's injuries resulted from the want of the exercise upon her part of such care as a person of ordinary prudence would have exercised under the same circumstances in the manner in which she stepped upon the boxing in descending from the car in question; and finally, for the reason that there was a fatal variance between appellee's pleading as to the proximate cause of her injury and the proof adduced upon the trial relative to that issue.

[1] As stated in the beginning, a full understanding of the issues made by the pleadings below, and the evidence adduced touching them, will be found in the opinion of this court on the former appeal above alluded to, and we think that what is said in that opinion with reference to the sufficiency of the evidence as to the claim of negligence upon which recovery was had on the last trial (the evidence on both trials being substantially the same) was sufficient to warrant the verdict of the jury finding appellant guilty of negligence, and that such negligence was a proximate cause of appellee's injuries, and that, therefore, the first two propositions under this assignment should not be sustained, but overruled.

[2] We are of opinion also that the proposition advanced under this assignment, to the effect that the evidence showed overwhelmingly that appellee's injuries resulted from her own negligence or contributory negligence, cannot be sustained, but on the contrary, we find that the evidence was such as to warrant the verdict of the jury acquitting appellee of such negligence. We do not deem it necessary to enter into a detailed discussion of the evidence bearing either upon appellant's negligence or appellee's contributory negligence, because both were merely issues of fact, as they usually are in cases of this character, and it would serve no useful purpose, either to the parties in this case or to the bar in general, to discuss them further.

[3] The contention that there was a fatal variance between appellee's pleading regarding the cause of her injuries and the proof adduced in support thereof cannot, we think, be sustained. One of the allegations of negligence contained in appellee's petition was as follows:

"That defendant was negligent in permitting the box or board covering the wires of the switching apparatus to be placed on the platform in such a way as that it would interfere with or endanger the safe departure of the plaintiff from its car, which plaintiff alleges it did do.

"That after the train had arrived at Seabrook, and had stopped at the regular station of defendant at that place, and passengers were leaving the train, plaintiff, in the exercise of due care and prudence for her own safety, undertook to descend the steps of the car in which she had been seated; that in stepping from the lower step of the coach to the platform of the station plaintiff's foot caught on the edge of the board or box covering of certain wires or switching apparatus running along on the platform by the side of the train, and just beneath the lowest step of the car; that plaintiff was violently precipitated to the ground or platform, striking her back and hips severely on the lower step of the car and on the ground, her ankles and legs crumpling up under her as she fell."

In this connection we might show the material part of appellee's testimony, as follows:

"I went to get off the train, and it seemed such a long distance from the train steps to the platform that I saw another step there and I stepped on that. When I stepped on that I fell; it wasn't a step; there wasn't room for my foot. I took hold of the handle of the car, or the rod that they use, with my right hand. I was getting out of the front of the coach, and had one foot, my right foot, on the last step of the car, and I was putting my left foot down on another step that I thought—it was a board, that boxing that they testified about. I put my foot down on that to step, and I had put the weight of my body to make that step; but then when my foot was down there, there wasn't room on there for my foot, and I had already made the weight of my body for the step, and I just fell. When I put my left foot down on it, the edge of that boxing struck my foot about the middle. It struck on this edge about like that (indicating before the jury). Then I just fell down. As to whether in descending from the steps and in putting my

foot on that thing, I was going rapidly or going slowly, it was such a terrible step that I had to go carefully. From the iron steps of the car it looked to me like three or four feet to that platform that was down there. It looked like it was about two or three or four feet, to me, and I saw this board down there, and I thought that was what it was for, it was such a long distance from the car steps to that board platform, and I saw this board down there, and I thought that board was put there for an extra step. I have seen them let down extra steps on trains, but there wasn't any there, just the ordinary step of the train, and there was this board. There was no stool placed there such as I have seen. * * * When I took the step from the lowest step of the car onto the boxing, I just put my foot down like I would in descending any other kind of steps. As to how far out from the steps that boxing that I stepped on extended, I measured it in looking down; it looked like it was enough for me to put my foot on, and, of course, I just judged there was plenty of room there to put my foot; thought it was put there to step on, to use an extra step, and I just supposed that the measurements would be enough for a step. When I put my foot down there, there was not room. * * *

"In getting off the last step of the car I observed this other step, boxing, or plank, when I glanced down to see how I was going to get down; I saw and looked at it; I had my hand on the handrail. When I got to the bottom step of the coach I placed my left foot on this box that was down there. At the time, and while I was placing my left foot on the bottom step, until it struck this box, I was supporting my weight on my right foot. I never turned my weight loose on my right foot until my left foot reached this box. After I got my left foot upon the box, I then put my weight on the left foot, and released my weight on the right foot, and I don't know just how you mean about that. When one takes a step, if they think the step is there, they put their foot down there, I suppose, before they feel that they have got their other foot there, they are ready to swing the weight down. * * * I did not particularly observe or notice where I placed my foot, but just went down and placed it like I had placed my foot on the other steps. There was no room on the plank for my foot, and my foot would not stay on the plank; I do not know how I looked when I fell. * * *"

The real contention of appellant, in connection with its fourth proposition, is that, according to appellee's petition, this boxing or board covering over the switching apparatus or switching wires laid along the platform was of such construction and in such shape as to interfere with her in her attempt to alight from appellant's train, and that it really obstructed her descent to the platform, and that her foot was caught thereon, and she was caused to fall to the platform; whereas, as appellant contends, appellee's proof showed that she deliberately stepped on this boxing or board covering of the switching apparatus as she would step on any other step, had one been there, in making her de-

scent to appellant's platform below; and that, according to her proof, this boxing or covering over the switching apparatus did not interfere with appellee in her descent, or her attempted descent, to the platform.

This, we think, is rather a narrow construction which appellant places upon appellee's pleading and proof in this connection, and we do not believe that the only case cited by appellant in support of its contention is authority for its proposition. The case cited is that of St. Louis, Southwestern Ry. Co. of Texas v. Johnson, 100 Tex. 237, 97 S. W. 1039. In that case it was held, substantially, that where the plaintiff alleged that his injuries were caused by the negligence of the railroad company's porter in moving a stool placed for passengers to step on in alighting from the train, and that as the plaintiff in that case was in the act of stepping on the stool, the porter negligently moved the same, and thereby caused him to fall and be injured, and the evidence adduced on the part of the railroad company in that case showing that the stool was not so moved by the porter, but that the plaintiff merely stumbled in getting down the steps of the coach, the railroad company in that case was entitled to have given a requested charge that plaintiff could not recover unless the stool was so moved, as claimed by him, and he was thereby caused to fall. It is not claimed by appellant in this case that the case cited is squarely in point on its proposition here, but rather that it is "persuasive." We do not think that the case sustains appellant's proposition of variance in this case. There is nothing to indicate in this record that appellant was in any manner surprised by reason of the difference in the proof and the allegation of appellee on this point, and we do not think that there was any fatal variance as claimed, or that any injury has resulted to appellant in this connection. We fully agree with appellant in its contention that "negligence, though proved, cannot form the basis of a judgment unless pleaded." That principle, we think, is not applicable here. The first assignment of error will therefore be overruled.

[4] By the second assignment it is complained that the trial court erred in submitting special issues Nos. 1 and 2, for the reason that such issues were in conflict with special issue No. 3; and also for the further reason, as claimed by appellant, that the undisputed evidence shows that the box upon which appellee attempted to step had been constructed by appellant company a long length of time, and that the same was not negligently constructed, but that, if appellee received any injury thereon, same was the direct and proximate result of the use for which appellee attempted to use the box in alighting from appellant's car, and was not the negligence of appellant in placing the box there where plaintiff attempted to alight.

We do not exactly understand why appellant contends that special issues Nos 1 and 2 were in conflict with special issue No. 3. Those issues are all copied above, and it is unnecessary to repeat them here; but, if it should be determined that there was such conflict between such issues, then we think that appellant is in no position to complain, for the reason that special issue No. 3 was submitted to the jury at appellant's request. We say this because we find in the record special issue No. 2 requested by appellant, and it is in the very same language, word for word and letter for letter, as special issue No. 3 embraced in the court's main charge, and we presume that the court simply adopted the special issue as its own, and embraced it in its charge, and appellant ought not to be heard to complain.

The proposition under this assignment is, substantially, to the effect that the evidence failed to establish any negligence whatever upon the part of appellant in constructing the boxing or in permitting it to remain where it was, and also that the undisputed proof showed that appellee was caused to fall, not by reason of such boxing being constructed and remaining where it was, but from the use plaintiff attempted to make of such boxing in alighting from the train, and that, therefore, there was no basis in the evidence to authorize the submission of special issues Nos. 1 and 2.

We think that our conclusion in disposing of the first assignment necessarily overrules this assignment, and it is accordingly overruled.

[5] By the third assignment of error complaint is made of the refusal of the trial court to give to the jury this special issue requested by the appellant:

"Is the condition of plaintiff's feet and legs below her knees the sole, direct, and proximate result of the fall she received at Seabrook in September, 1914, or are such conditions the result of some other cause or causes than the injuries she received? You will answer this question as follows: 'The condition of plaintiff's feet and legs below her knees is the sole, direct, and proximate result of the injuries she received at Seabrook;' or, 'The condition of plaintiff's feet and legs below her knees is the result of other cause or causes than the injuries she received at Seabrook.' "

We find under the assignment this proposition:

"There being evidence sufficient to raise the issue that the condition of plaintiff's feet and legs below her knees did not result from the fall she received at the time and place alleged by her, but that such condition resulted from other cause or causes, for which the defendant was not responsible, the court should have submitted the requested special issue quoted in the assignment, and the refusal to submit it constitutes reversible error."

We agree with the statement contained in the proposition to the effect that there was evidence raising the issue as to whether the condition of plaintiff's legs below her knees was caused by any injury sustained by her in alighting from appellant's train on the occasion in question, but we cannot concede that the trial judge's refusal to submit this special issue was reversible error, or error at all. The condition of plaintiff's legs below her knees was not the only injury that she was complaining of in this case, but there were several other injuries specified in her petition, and alleged to be of a serious nature, and entirely disconnected from any injury to her legs below her knees. It occurs to us that, had the trial court submitted this issue, the jury's answer to it one way or the other could not have been determinative of any real issue in the case, but only of an evidentiary fact; and, had the jury answered the issue by saying that the condition of appellee's legs below her knees was not the result of injuries received by her on the occasion in question, it could not have afforded the basis of any judgment in this case, and the court, notwithstanding such an answer, would have been compelled to have entered judgment for appellee upon the verdict of the jury, as it did in this case.

[6] As we understand the rule, where a case is submitted to a jury on special issues, the trial court is not required to submit questions which involve merely a decision upon evidentiary facts, or some issue merely incidental to the material issues which control the controversy, and by which it must be determined. T. & P. Ry. Co. v. Miller, 79 Tex. 82, 15 S. W. 264, 11 L. R. A. 395, 23 Am. St. Rep. 308; Railway Co. v. Jenkins, 172 S. W. 986; Railway Co. v. Hapgood, 184 S. W. 1075; Texas Transportation Co. v. Winters, 193 S. W. 370.

If, in connection with this requested instruction as far as it went, the jury had been told that such injuries to her legs below her knees, unless they were caused by appellant's negligence on the occasion of her getting off the train at Seabrook, that then they should not be taken into consideration in arriving at the amount they should allow appellee, then we would have had a different question had the court refused the special instruction, but, as the matter stands, no reversible error was committed by the trial court in refusing the special instruction. The assignment is overruled.

In this connection we might add that the trial court's special issue No. 5 was sufficient, we think, to confine the jury in their answer to such injuries as resulted to appellee in her attempt to alight from appellant's train on the occasion in question. We might add, further, that there is no assignment that the verdict of the jury is excessive.

This disposes of all of appellant's assignments, and results in an affirmance of the judgment, and it will be so ordered.