**EL PASO ELECTRIC CO. v. LUDLOW et al.
(No. 1951.)**

(Court of Civil Appeals of Texas. El Paso.
Feb. 3, 1927. Rehearing Denied
March 3, 1927.)

**1. Carriers ⬅247(4)—Street railway company
held not to owe care of "passenger" to person who had alighted from car.**

After woman had alighted from street car
and was standing on pavement near car, she
was no longer "passenger" and company did
not then owe her duty of carrier to passenger.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Passenger.]

**2. Carriers ⬅247(1)—Carrier's duty to passengers applies only to period in which carrier is bailee of passenger's person.**

Carrier's duty to passengers applies only
to period during which carrier is, in certain
sense, bailee of passenger's person.

**3. Street railroads ⬅93(4)—Motorman has no
duty to warn adult person of danger from
swing of street car rounding curve.**

Motorman of street car may assume that
adult person standing near track, apparently
able to see, hear, and move, and having notice of approach of car and existence of curve,
will avoid being struck as car swings around
curve, and has no legal duty to warn such person of possible danger because of swing.

**4. New trial ⬅108(4)—Newly discovered evidence held not sufficient to set aside verdict
against person struck by street car swinging
around curve.**

In action by person who had just alighted
from street car for injuries from being struck
by car as it swung around curve, newly discovered evidence *held* not sufficient to warrant
setting aside verdict and judgment for defendant.

**5. New trial ⬅108(1)—Where newly discovered evidence does not apparently conflict with
that on trial, verdict should not be set aside.**

Where there is apparently no conflict between newly discovered evidence and that on
trial, which would change result of trial, verdict
and judgment rendered thereon should not be
set aside.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by Mrs. W. E. Ludlow and another
against the El Paso Electric Company for
personal injuries. From an order setting
aside a verdict and judgment for defendant
and granting a new trial, defendant appeals.
Reversed and remanded, with instructions.

Baker, Botts, Parker & Garwood, of Houston, and Goggin, Hunter & Brown, of El
Paso, for appellant.

Roy D. Jackson and C. L. Vowell, both of
El Paso, for appellees.

WALTHALL, J. This case presents an
appeal from an order of the trial court setting aside the verdict and judgment in favor
of appellant, El Paso Electric Company, and
granting appellees Ludlow a new trial.

On September 11, 1925, Mrs. W. E. Ludlow,
about 12 o'clock noon, entered appellant's
Fort Bliss east-bound street car as a passenger, and as such remained thereon until
she reached the point of her destination on
Hueco street, where the car on which she
was traveling turns north onto Copia street.
On reaching Copia street, at the usual signal given the street car conductor by Mrs.
Ludlow, or some of the passengers, the conductor stopped the car and opened the door
of the car, and Mrs. Ludlow and other passengers voluntarily left the car on the south
side at the front end of the street car; Mrs.
Ludlow safely getting down from the street
car with both of her feet safely on the street.
After other passengers and Mrs. Ludlow had
alighted from the street car, Mrs. Ludlow
being the last to leave the car, the street car
conductor closed the car door and started the
car north on the curve into Copia street, and
in doing so the rear end of the car in its outward swing, in making the curve, struck
Mrs. Ludlow, knocking her down onto the
street pavement and thus causing the injuries of which she complains.

The negligence assigned by Mr. and Mrs.
Ludlow as causing the injuries to Mrs. Ludlow, while other negligent acts are assigned,
the only one submitted by the court, is that
of starting the car from which Mrs. Ludlow
had alighted without allowing time for her
to get beyond the point of danger from the
movement of the car in its turn into Copia
street. It is alleged and the evidence shows
that Mrs. Ludlow was 67 years of age, and,
while otherwise strong, healthy, and vigorous, with good sight and hearing and capable
of traveling alone, she had suffered somewhat from rheumatism, and at the time of
the accident causing her injuries was carrying some small bundles, which, together with
her age, caused her to move somewhat slower in her movements than a younger person
in full health and vigor.

The appellant company answered by general demurrer, general denial, and specially
denied each of the negligent acts assigned.

The case was tried with a jury and submitted upon special issues. On issues submitted the jury found: The appellant's motorman did not start the car from which
plaintiff had alighted without allowing her
reasonable time to get beyond a point of danger from the movement of the car.

On special issue requested by appellant,
the jury found: The injuries received by
Mrs. Ludlow were due to or the result of unavoidable accident.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The court entered judgment that appellees take nothing by their suit.

Appellees filed original and amended motions for new trial on the ground of newly discovered evidence. The trial court heard the evidence on the matters stated in the motion, and on the diligence used to secure same at the trial and the evidence offered on the contest of the motion, and granted the motion and set aside the verdict and the judgment entered thereon.

Appellant duly excepted and gave notice of appeal from the order granting a new trial.

The point on which appellees offered the newly discovered evidence, as stated in the motion for new trial, is that immediately after her (Mrs. Ludlow) feet reached the ground, and before she had time to move, the car started forward so suddenly that she had no opportunity to get beyond the swing of the rear of said car.

On the trial of the case on the merits, Mrs. Ludlow testified:

"When the car stopped I got up to get off. I got off and moved forward as rapidly· as I could after the car stopped. * * * I went directly to the front and got off the car. It was the front door that was open. * * * I stepped to the ground when I reached the front. When I stepped to the ground, I didn't think I had time to move away from the car; I got my feet on the ground, and the first thing I knew some one was trying to pick me up; that is all I remember. * * * I am familiar with that stopping point. Yes; I did know there was a turn in the street car track there from the street on which I was riding going east to the north; I always knew that some cars turned there. I never had thought that the rear end of the car in making the turn comes out some little distance. I did not know that the rear end made so wide a turn, so big a turn. * * * From the platform you step to a step, and then from the step to the street. The car was standing still at the time I made my last step to the street, and got both feet on the pavement. * * * After I stepped to the ground I did not have time to do anything."

The evidence shows that the car was a large one, being 41 feet and 2 inches in length. Without quoting the evidence, it is undisputed and shown by measurement that in going around the curve the outside sweep of the car would extend from 1.7 feet to 4.17 at the west point of the step, and 4.25 at the east point of the step. The car step takes up about 1 foot. To be clear of the sweep of the car in making the turn Mrs. Ludlow must have been at least 3 feet away from the step. The evidence shows that the step upon which passengers leave the car is a folding step. When the door is opened the step lets down and the passenger steps down on the step and steps off from the step onto the pavement. The door is opened with a valve, and the door opens and unfolds itself. The door is closed with the same valve that opens it. ·It folds the step up by the side of the car, closes the door, and releases the brake.

Albert Neugebauer, an 11 year old school boy, was riding a bicycle west on the north side of Hueco street. Just as he was near entering Copia street he saw the accident. He said:

"The last (Mrs. Ludlow) was getting off the street car; a Ford truck passed her going fast; then another car came by going slow; then she started to take a step and the street car knocked her over. The Ford car and the other car were going east on Hueco—the Ford was in front. The street car struck her after the Ford passed. When the Ford car passed, the street car was standing still. The other car was about 30 feet behind the Ford car. The street car just started up when the second car passed. The lady started to take a step after the door closed. When this car passed by she pulled her foot back; then after the last car passed by, she started to walk and the street car struck her. * * * She was off the street car before the Ford car came along. The Ford car did not pass until the street car door closed. It was a truck. Shortly after another car came along. She put her foot out as if to take a step away from the car, and a car came along and she took that foot back, and then the car swung round and the rear end of it hit her. That is the way it occurred."

The newly discovered evidence was that of Jessie Campbell, a 10 year old school girl. She said that she was across the street (Copia) on the east side, in a store standing at the window. She saw the street car when it came up. She said:

"The street car got there; it stopped where people usually get off and on, and I saw one person get off. I did not at that time know who it was. It was a woman. When she got off, why she got her feet on the ground; the car started off, and when the car started off the car hit her. * * * After she got her foot on the ground, the car started forward fast, and I saw it hit her. I had not seen cars start and stop there before. As soon as the car struck her, I ran out the door. * * * Mrs. Ludlow took about two or three steps when she got off the car. She walked directly away from the car."

There was much evidence introduced as to the diligence used in the discovery of the evidence, but we think we need not, from the view we take of the case, state that part of the evidence.

The evidence of all of the witnesses, including that of Jessie Campbell, the newly discovered witness, clearly shows that while Mrs. Ludlow had been a passenger on the street car immediately before the accident causing her injuries, at the time of the accident, she had safely gotten down from and out of the car on to the street.

The case seems to have been tried and ·the charge submitted upon the theory that Mrs. Ludlow was a passenger of appellant company at the time she was injured.· The questions are then presented: Was Mrs. Lud-

low, at the time she was injured, a passenger on appellant's street car, and, if not, what duty did appellant then owe her which it did not then perform, and does the newly discovered evidence, disclosed by the record, tend to prove that a failure of appellant to perform that duty caused the injuries complained of?

[1, 2] We have concluded that, after Mrs. Ludlow had safely gotten down from the car onto the pavement, she was not then a passenger on the car, and the appellant did not then owe her the duty as carrier of a passenger. The rule imposed upon carriers of passengers, as announced by Thompson, Carriers of Passengers, is applicable only to the period during which the carrier is, in a certain sense, the bailee of the person of the passenger. This rule is approved by our Supreme Court in Tex. & Pac. Ry. Co. v. Miller, 79 Tex. 78, 15 S. W. 264, 11 L. R. A. 395, 23 Am. St. Rep. 308; Tex. & N. O. Ry. Co. v. Wiggins (Tex. Civ. App.) 156 S. W. 1131.

In the first case referred to Mrs. Miller was injured by a fall caused by starting the train while she was alighting therefrom. In discussing that case, Judge Stayton said:

"The transit cannot be considered ended until the passenger has left the car."

In St. L., A. & T. Ry. Co. v. Finley, 79 Tex. 85, 15 S. W. 266, in discussing the case, Judge Gaines referred to the Miller Case, and said that the contract of a railroad company with a passenger does not terminate until he has alighted from the cars, and that the company owed Mrs. Finley the highest degree of care until she had alighted from the cars. See, also, 10 C. J. pp. 623–625, where the rule seems to be general that the relation of passenger and street car carrier ceases when the passenger has safely alighted from the car; that is, has both feet squarely and safely on the ground, or has had a reasonable opportunity to do so. The same rule may not apply to carriers by railroads where depots, platforms, and other transportation facilities are necessarily used by railroad companies to provide for the safe receiving and discharging of passengers.

[3] The rule approved by the weight of authority is that, in view of the well known fact that in rounding a curve the rear end of a street car will swing beyond the track and overlap the street to a greater extent than the front, the motorman may rightfully assume that an adult person standing near the track, who is apparently able to see, hear, and move, and having notice of the approach of a street car and of the existence of the curve, will draw back far enough to avoid being struck by the car as it swings around the curve in the usual and expected manner, and therefore no legal duty is imposed upon the motorman to warn such person against the possible danger of a collision with the rear, because of the swing, if he remains in the same position. 25 R. C. L. p. 1245, par. 108, and the cases there cited. The rule as stated seems reasonable and sustained by the authorities.

[4] We have carefully reviewed the newly discovered evidence, and we have concluded that the verdict and judgment should not have been set aside and that a new trial should not have been granted on what is disclosed by the record as to her evidence, and especially in view of the rule as above stated. Mrs. Ludlow said she knew there was a turn in the street car on which she had been riding, but had never thought that the rear end of the car in making the turn comes out some little distance, a matter of common knowledge of which she must take notice. Now, while she says she did not think she had time to move away from the car, and again that she did not have time to, Jessie Campbell, the newly discovered witness, among other statements made, said:

"Mrs. Ludlow took about two or three steps when she got off the car. She walked directly away from the car."

We have found nothing in the evidence of Jessie Campbell that tends to show that the motorman started the car from which Mrs. Ludlow had alighted without allowing her reasonable time to get beyond a point of danger from the movement of the car, the fact found by the jury, or that the appellant failed to observe any duty it owed Mrs. Ludlow after she had safely alighted from the car.

[5] As said by Judge Powell in Gulf, C. & S. F. Ry. Co. v. Canty (Tex. Com. App.) 285 S. W. 296, and we are in sympathy with the universal rule of law which gives courts greatest latitude in the exercise of their discretion in setting aside the verdict of a jury, but where there is apparently no conflict in the newly discovered evidence, and that on the trial, that should change the result reached by the jury on the trial, there is no exercise of judicial discretion open to the court, and the verdict as found and the judgment as rendered thereon should remain and not be set aside.

For reasons stated the case is reversed and remanded, with instruction that judgment be entered for appellant.