**MISSOURI, K. & T. RY. CO. OF TEXAS v. KEMP. (No. 7260.)**

(Court of Civil Appeals of Texas. Dallas. Feb. 6, 1915.)

1. CARRIERS ☞280—CARE FOR PASSENGERS ALIGHTING.

The care to be exercised by a carrier to prevent injury to a passenger alighting from a train is that high degree that a very cautious and prudent person would exercise under the circumstances.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1085–1092, 1098–1103, 1105, 1106, 1109, 1117; Dec. Dig. ☞280.]

2. CARRIERS ☞303—CARE FOR PASSENGERS ALIGHTING—SPECIAL CONTRACT.

As regards passengers not parties to, or acquainted with the terms of, a special contract of a carrier to run a train and transport passengers to a place where it had no station, or facilities for discharging, and ordinarily did not receive or discharge, passengers, the carrier is not absolved from its duty as to their safety in alighting.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1216, 1218, 1224, 1226–1232, 1234–1240, 1243; Dec. Dig. ☞303.]

3. CARRIERS ☞320—CARE FOR PASSENGERS ALIGHTING—QUESTION FOR JURY.

Whether the carrier, in the exercise of the high degree of care imposed on it for the safety of a passenger in alighting, where there were no facilities therefor, should have provided a step box, or some such appliance, is a question for the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1118, 1126, 1149, 1153, 1160, 1167, 1179, 1190, 1217, 1233, 1244, 1248, 1315–1325; Dec. Dig. ☞320.]

4. CARRIERS ☞284—INJURY TO PASSENGER ALIGHTING—NEGLIGENCE OF VOLUNTEERS.

The carrier is not liable for injury to a passenger in alighting because of persons assisting her, though not employés of, or authorized to act for, the carrier, being incompetent therefor or negligent in so doing.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1125, 1127–1135, 1173, 1222; Dec. Dig. ☞284.]

5. CARRIERS ☞284—INJURY TO PASSENGER ALIGHTING—NEGLIGENCE OF ASSISTANT—LIABILITY OF CARRIER.

Where by the agreement between a society and a railroad for running a special train and stopping at a place where there was no station members of the society were to assist passengers off, the carrier would be liable for incompetency or negligence of members so assisting a passenger to alight.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1125, 1127–1135, 1173, 1222; Dec. Dig. ☞284.]

6. APPEAL AND ERROR ☞736—RIGHT TO COMPLAIN OF ERROR—INCONSISTENT POSITIONS.

Defendant's assignment of error to the giving of an instruction, as unauthorized by the evidence, will not be overruled because it also complains of the exclusion of testimony, which, if admitted, would have authorized the instruction, where it was not admissible on the theory on which it was offered, which was that under it the law would be the opposite of that given by the instruction.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3028, 3029; Dec. Dig. ☞736.]

Appeal from District Court, Grayson County; W. J. Mathis, Judge.

Action by R. M. Kemp against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

C. C. Huff, of Dallas, and Head, Dillard, Smith, Maxey & Head, of Sherman, for appellant. E. J. Smith, of Denison, and Freeman & Batsell, of Sherman, for appellee.

TALBOT, J. The appellee instituted this suit against the appellant to recover damages on account of personal injuries received by his wife, Mrs. E. P. Kemp, on October 12, 1913. The plaintiff alleged, in substance, that on that date there was a public unveiling ceremony conducted at Fairview Cemetery, near Denison, Tex., by the Woodmen of the World, and that a passenger train was operated from appellant's depot in Denison to a point opposite said cemetery for the purpose of transporting people to and from said cemetery on the occasion of said unveiling; that his wife, Mrs. Kemp, boarded said train and was a passenger on same; that when the train arrived at the cemetery and stopped, the point at which it stopped was in a cut, and was provided with no platform and facilities for the convenience and use

of the passengers in disembarking, and was an unsafe and dangerous place for passengers, and especially ladies, to alight; that the lowest step of the coach in which Mrs. Kemp was riding, and from which she attempted to alight, was three or four feet from the ground, and that in alighting from said train Mrs. Kemp sprained her ankle and broke one of the small bones in her leg, and sustained serious personal injury; that the defendant, its agents, servants, and employés, negligently failed and refused to furnish a step of any kind for the use of passengers in alighting from said coach; that it was not reasonably safe for passengers, especially ladies, to alight from the said train without the use of a suitable step or other appliance for use in so alighting, and it had long been the custom to supply said step or other appliances suitable for said purpose; that on this occasion the defendant, its agents, employés, and servants, negligently failed and refused to furnish any sort of appliance for said use. Plaintiff further alleged that the defendant was guilty of negligence in that there should have been, and was not, present a competent employé of the defendant to assist passengers, and especially ladies, in alighting from said coach at said place; that, if plaintiff be mistaken in saying that no one assisted the said Mrs. Kemp to alight, then he says that the person or persons who undertook to assist her in alighting were not competent, skillful, and careful persons for rendering such assistance, and said person or persons, if any, were negligent, in that they failed to exercise the degree of care, skill, and prudence then and there proper and requisite in and to said service; that the defendant, its said agents, employés, and servants, were likewise guilty of negligence, in that they knew, or by the exercise of proper care would have known, the danger attendant upon alighting from said coach while in said position, and, with such knowledge, failed to warn the said Mrs. Kemp and other passengers on said train of said danger; that all of the aforesaid facts and dangers were known to the defendant, its agents, servants, and employés, or, by the exercise of ordinary care, would have been known to them, but all of said dangers were unknown to the said Mrs. Kemp, and the said Mrs. Kemp, while in the exercise of ordinary care for her own safety, in a prudent and careful manner undertook to alight from the said coach, and in so doing stepped from the last or lower step thereof to the ground, and was compelled to jump or descend a distance of three or four feet. As a consequence or result of said descent from said step to the said ground, she received serious and permanent injuries which were the direct and proximate cause of the negligence set out.

Defendant, for answer, denied specifically the allegations of plaintiff's petition, and for special answer alleged: That it is true, as alleged, that the Woodmen of the World and Woodmen Circle, certain organizations, had a celebration or ceremony, at Fairview Cemetery, near Denison; that plaintiff's wife belonged to one of said organizations, and that a committee from said organizations, being agents of said organizations, and the agent of plaintiff's wife, with full knowledge of the situation at Fairview Cemetery where defendant's road passed the same, entered into an agreement with defendant to run a train and transport the members of said organization to said cemetery for the purpose of attending said unveiling ceremonies; that the point to which said parties were transported was not a station on defendant's line; that said committee knew that same was not, and that the members of said organization knew that same was not a station, and knew that no facilities were provided for passengers to disembark at said point, and that plaintiff's wife knew of said condition at the time she embarked on said train to go to said cemetery, at the time she disembarked from the same, and at the time the committee representing the organizations contracted with the defendant to run its train to said point, and defendant says that no duty devolved on it to construct a station or platform to facilitate passengers in disembarking from trains at said point; that the dangers incident to disembarking at said point were well known to plaintiff's wife at the time she attempted to disembark, or, if she had exercised ordinary care in disembarking from said train at said point at the time of her alleged accident, such condition would have been known to her in ample time for her to have avoided disembarking at said point, if she had so desired. Defendant says that plaintiff's wife well knew of said situation at the time she attempted to disembark, and assumed the risk of said situation in disembarking from said train, and that plaintiff's said wife was guilty of contributory negligence in attempting to disembark from said train at said point at said time, and was guilty of contributory negligence in the manner in which she disembarked from said train, and that those assisting her in disembarking from said train were negligent in the assistance rendered her on said occasion.

The case was tried February 9, 1914. The general issue was submitted to the jury, and the trial resulted in a verdict and judgment in favor of appellee for $3,287.50, from which defendant appealed.

[1] The first and second assignments of error complain, respectively, of the court's definition of negligence, and the term proximate cause. In the first the jury was told that negligence, "as that term is used in this charge, means a failure to use that high degree of care that a very cautious, prudent person would have used or exercised under the same or similar circumstances." In the second the jury was instructed that the term "'proximate cause' of an injury, as that

term is used in this charge, is a cause which in a natural and continuous sequence, unbroken by any new cause, produces an event, and without which the event would not have occurred. But, in order to warrant a finding that negligence is the proximate cause of an injury, it must appear from the evidence that the injury was the natural and probable consequence of the negligence, and ought to have been foreseen as likely to have occurred by a very cautious, prudent person, in the light of attending circumstances." The proposition contended for under both of these assignments is as follows:

"The duty that devolves on railway companies as to providing and maintaining depots and appurtenances and facilities to be used by passengers in boarding trains and disembarking therefrom when such trains are standing for such purpose is the exercise of ordinary care."

The proposition should not be sustained. The care to be exercised by railway companies to prevent injury to passengers alighting from their trains is that high degree of care that a very cautious and prudent person would exercise under the same or similar circumstances, and this duty continues under the contract of carriage after the train has stopped until the passenger has alighted from the car. Railway Co. v. Finley, 79 Tex. 85, 15 S. W. 266. The passenger, of necessity, must trust to the railway company to provide reasonably safe means and measures for his disembarkation, and until he has alighted from the train is, in a sense, the bailee of the company. "The transit cannot be considered as ended until the passenger has left the car," and alighted therefrom. Railway Co. v. Miller, 79 Tex. 78, 15 S. W. 264, 11 L. R. A. 395, 23 Am. St. Rep. 308; Railway Co. v. Finley, supra; Street on Personal Injuries, § 205.

[2-6] The third assignment of error complains of the eighth paragraph of the court's charge, wherein the jury was directed to bear in mind the definitions of "negligence" and "proximate cause" theretofore given them, and instructed that:

If "defendant's servants and employés stopped the coach in which plaintiff's wife was riding at a place which was not reasonably safe for passengers to alight therefrom with a reasonable degree of safety, and further believe from the evidence that, by reason of so stopping said coach, it was reasonably necessary for defendant to provide a step box or other appliance for plaintiff's said wife to use in alighting from said coach, or to furnish a competent person to assist her in alighting therefrom, and if you further believe from the evidence that defendant failed to provide such step box or other appliance for said purpose, and failed to furnish a competent person to assist plaintiff's said wife in alighting from said coach, or believe from the evidence that certain parties did assist her in alighting from said coach, but you do not believe from the evidence that said parties were competent for such service, or if you believe from the evidence that they were competent for such service, but you further believe from the evidence that, in so assisting plaintiff's said wife, said parties failed to exercise that degree of care which a very cautious, prudent person would have exercised under the same or similar circum-

stances, and further believe from said evidence that, in alighting from said coach, plaintiff's said wife sustained injuries to her person, as alleged in his petition, and further believe from the evidence that defendant was guilty of negligence in any or all of the above-mentioned particulars, and that such negligence, if any, was the proximate cause of her injuries, if any, to find for plaintiff."

Appellant propounds under this assignment the following propositions:

First. "The railway had the right to make a contract to run a special train and transport passengers to a place where it had no station and facilities for discharging them, and where it did not ordinarily receive and discharge passengers, and, having made such contract, negligence could not be predicated on the fact that it carried out its contract and stopped the train where it agreed to stop it."

Second. "Where the company makes such a contract, and the parties with whom the railway makes the contract have full knowledge of these facts, negligence cannot be predicated upon its failure to provide step boxes and appliances at such point for the discharge of passengers from such train."

Third. "So much of the charge as submits the issue of the failure to furnish a step box and appliances to facilitate the disembarking of passengers is not authorized by the evidence."

Fourth. "Where passengers who were not employés of the railway offered to assist plaintiff's wife in disembarking from a train, and she availed herself of their services, liability of the railway cannot be predicated on their lack of competency for, or care in, the performance of that service."

Neither of these propositions, except the fourth, will be sustained. If, under the special contract referred to in the first proposition, negligence, in a suit by one of the parties making such contract with the railway company, "could not be predicated on the fact that the company carried out its contract and stopped the train where it agreed to stop it," a question we are not called upon to decide, yet the railway company, by reason of such contract, would not be absolved from the performance of that duty imposed upon it by law for the safety and protection of its passengers not parties to such contract. The appellant, and not the parties with whom it made the contract, was in control of the train, and, at least as to passengers not parties to the contract, it was not absolved from the performance of the duty imposed upon it by law for their safety and protection, no matter what the terms of the contract were. As we understand the evidence, it shows that appellee's wife was not a party to the contract in question, was not acquainted with its terms, and hence not bound thereby. The proposition that so much of the charge objected to as submitted the issue of the failure to furnish a step box and appliances to facilitate the disembarking of passengers was not authorized by the evidence is not, we think, supported by the record. Whether the appellant, in the exercise of that high degree of care imposed upon it for the safety of Mrs. Kemp in alighting from its train, should have provided a step box or some such appliance for her use, was a ques-

tion for the jury. We think, however, appellant's fourth proposition must be sustained. It will be noted that the charge under consideration instructed the jury to find for the appellee, if the appellant negligently failed to provide a step box or other appliance for appellee's wife to use in alighting therefrom; or if certain parties assisted appellee's wife in alighting from the train who were incompetent for such service; or if certain parties assisted appellee's wife in alighting from the train who were competent for such service, but in·so assisting her to alight failed to exercise that degree of care which very cautious, prudent persons would have exercised under the same or similar circumstances. Thus the court submitted three separate and distinct grounds of negligence, upon the existence of either of which a verdict in favor of the appellee could be predicated. The submission of the last two grounds mentioned were, in our opinion, unauthorized by the evidence, and should not have been submitted. On direct examination appellee's wife testified:

"As to what assistance, if any, was rendered me in getting off the train, well, I had no assistance. Of course, a man stood on each side, but didn't assist me any. There was no member of the crew there, either brakeman or porter. In getting off I got off of the steps from the lower step to the ground. I jumped. I jumped from the lower step."

On cross-examination she testified:

"With reference to whether there was two gentlemen assisting the ladies off at every opening of the train, I don't know that there was only at one opening. At that opening there were two gentlemen standing there; Woodmen, I presume. I don't know that they were assisting the ladies. Each one taken hold of my hand, just my hand, and didn't assist me; didn't have any effect on me. They did catch hold of me and went through the motion."

The evidence fails to show that the parties who Mrs. Kemp says made some pretense of assisting her off the train were directed or authorized by the appellant to assist her. That they were not members of the train crew provided by the appellant is clear from her testimony. There is a general statement in the testimony of appellant's agent, Gerlach, to the effect that parties assisted the ladies in getting off the cars, the Woodmen and everybody, and that he helped himself, but that the parties so assisting, other than himself, were acting by authority of the appellant is not sustained by any evidence we have discovered. It certainly was not sufficient to authorize the court to assume, as it did in the charge complained of, that paid parties were acting for and at the instance of appellant. This being the status of the evidence, the effect of the charge was to authorize a verdict in favor of the appellee if the jury believed the parties who assisted his wife off the train were incompetent for that service, or, being competent, failed in the assistance rendered to exercise that degree of care imposed upon appellant by law, regardless of whether these parties were employés of appellant or author-

ized to act for it; and constitutes reversible error. To cure this error, as far as possible, the appellant requested the court to give special charges prepared by its counsel instructing the jury to the effect that:

If "when the train arrived at the point where the alleged accident occurred Woodmen who were passengers on said train undertook to assist lady passengers to disembark from said train, and further believe from the evidence that plaintiff's wife availed herself of their assistance, and that said Woodmen were incompetent or were· negligent in the way that they assisted plaintiff's wife to disembark from said train, and that such negligence caused plaintiff's wife's injuries, if any she received, then you will return your verdict in favor of the defendant."

These charges embraced correct propositions of law applicable to the facts, and should have been given, instead of that portion of the court's charge upon the subject. The record shows that appellant offered testimony, which, upon objections of the appellee, was excluded, to the effect that at the time the agreement was made to run the train and stop it near the cemetery there was an understanding between the witness Gerlach, as the representative of the railway company, and the committee representing the Woodmen, that the Woodmen would assist the ladies in getting off at the cemetery, and that this was a condition in making the contract to run the train, and that the Woodmen, in pursuance of that agreement, stood at the steps of the cars when the ladies were disembarking from the train, and did assist them in alighting therefrom. Had this testimony been admitted, the court's charge, which we have just held was erroneous, would doubtless have been authorized, but, this testimony being excluded, and there being no other testimony authorizing the charge, it was error. The appellant complains of the exclusion of this testimony, but it also complains of the charge we are discussing, and these apparent inconsistent positions urged in this court would not warrant us in overruling the assignment asserting that the court's charge, in view of the evidence admitted, was prejudicial. The said testimony offered by appellant, however, was offered upon the theory, as we understand, that under its contract with the committee representing the Woodmen, the Woodmen assumed the responsibility of assisting passengers off the train at the cemetery, and therefore it was not responsible for the incompetency of those assigned to perform that service, nor liable for the negligent manner in which it was performed. This is shown by appellant's assignment of error complaining of the exclusion of the testimony, and the contentions thereunder. But, in our opinion, the testimony was not admissible upon the theory and for the purpose offered, and appellant is in no position to complain of its exclusion.

The other assignments of error need not be discussed. They are either disposed of adversely to appellant by what we have already

said, complain of the refusal of special charges covered by the court's main charge, or point out no reversible error.

For the reason indicated, however, the judgment of the court below is reversed, and the cause remanded.