United States Court of Appeals
Fifth Circuit

**F I L E D**

July 26, 2007

Charles R. Fulbruge III
Clerk

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————

No. 06-51460
Summary Calendar

————

In The Matter Of: PAUL CLIFFORD JACOBSON

Debtor

--------------------------------------------------------

PAUL CLIFFORD JACOBSON

Appellant

v.

BRETT ORMSBY, Conservator for James Robert Miller

Appellee

————

Appeal from the United States District Court
for the Western District of Texas, San Antonio
USDC No. 5:05-CV-1125.

————

Before KING, BARKSDALE, and GARZA, Circuit Judges.

PER CURIAM:[*]

The bankruptcy court held that the debt owed by appellant Paul Clifford

Jacobson to appellee James Robert Miller is nondischargeable pursuant to 11

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

U.S.C. § 523(a)(2)(A), and the district court affirmed the judgment. For the reasons that follow, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The subject of this adversary proceeding before the bankruptcy court was a series of transactions among appellee James Robert Miller, appellant Paul Clifford Jacobson, and Clair Phillips, a business associate of Jacobson. Jacobson owned a company called FS Condominiums ("FSC").[1] Over a period of several years, Miller loaned funds to FSC and Jacobson, evidenced by multiple promissory notes, so that FSC could acquire and refurbish thirty-three condominium units in Dallas, Texas. The promissory notes were secured by liens on various condominium units. In 1999 and 2000, Miller entered into a series of agreements with Jacobson to extend the maturity dates on the notes.

But in November 2000, when Jacobson needed more money to complete the project, Miller was unwilling to lend additional funds. To allow Jacobson to borrow the needed funds from Bank Dallas, Miller and Jacobson signed a "Letter Agreement" on November 29, 2000. The agreement contemplated the execution of a new note in a principal amount equal to the total outstanding indebtedness of FSC and Jacobson, extending the due date of the indebtedness to March 15, 2001, and secured by a new deed of trust on twenty-three of the condominiums that collateralized the outstanding indebtedness. The agreement provided that Miller would release his first liens on ten other condominiums to allow those units to be pledged as collateral on a loan from Bank Dallas. In December 2000, Miller and Jacobson executed the "Modification Agreement," which implemented and supplemented the Letter Agreement. On June 1, 2001, the parties modified the Modification Agreement.

---

[1] Jacobson was the president, sole officer, director, and owner of 100% of the outstanding shares of FSC stock.

Ultimately, however, Jacobson failed to make any loan payments, and on August 6, 2002, the twenty-three units on which Miller held the first lien were subject to a foreclosure sale. Miller, through his conservator Brett Ormsby, purchased the units at the foreclosure sale.

Ormsby, on Miller's behalf, filed suit against Jacobson, FSC, and Phillips in state district court in Dallas County, Texas, alleging fraud in real estate transactions, fraud, fraud in the inducement, and breach of fiduciary duty. Shortly afterwards, Jacobson filed a voluntary petition for bankruptcy pursuant to Chapter 7 of Title 11 of the United States Code.

Ormsby then filed a complaint instituting an adversary proceeding in Jacobson's bankruptcy case. The complaint contained allegations of fraud and fraud in the inducement and asked that the debts owed by Jacobson to Miller be deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (4), and (6). The bankruptcy court found that the debt was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) as Jacobson had "obtained an extension, modification, or renewal . . . by false representations." The district court affirmed the bankruptcy court's decision.

Jacobson appeals, arguing that the district court erred when it affirmed the following determinations by the bankruptcy court: (1) that Jacobson made a false representation with respect to the amount of funds needed to complete the project; (2) that Jacobson, a member of the board of directors of the homeowners' association, made a false representation that the homeowners' association was about to foreclose on the condominium units because the assessments had not been paid; (3) that there was no accord and satisfaction, release, compromise and settlement, novation, or purging of the false representations effected by the later extension or renewal of the loans, and (4) that Miller's exhibits correctly reflected the amount of damages owed by Jacobson.

## II. Discussion

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. In re Acosta, 406 F.3d 367, 372 (5th Cir. 2005). "Under a clear error standard, this court will reverse 'only if, on the entire evidence, we are left with the definite and firm conviction that a mistake has been made." Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp., 346 F.3d 530, 533 (5th Cir. 2003) (quoting In re Walker, 51 F.3d 562, 565 (5th Cir. 1995)).

Section 523(a)(2)(A) of the Bankruptcy Code provides that a debt will not be discharged in bankruptcy if it is "for money, property, services, or an extension, renewal, or refinancing of credit," to the extent that it was "obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). "A creditor must prove its claim of nondischargeability by a preponderance of the evidence." In re Acosta, 406 F.3d at 372. For a debt to be nondischargeable as a result of false representations under § 523(a)(2)(A), the creditor must show "(1) [a] knowing and fraudulent falsehood [ ], (2) describing past or current facts, (3) that [was] relied upon by the other party[ ].[2] RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1292-93 (5th Cir. 1995). Section 523(a)(2)(A) "requires justifiable, but not reasonable, reliance." Field v. Mans, 516 U.S. 59, 74-75 (1995).

A. False Representations

In reaching its decision, the bankruptcy court found that Jacobson made several false representations, including (1) that a $400,000 loan would be enough to complete the entire project and (2) that the homeowners' association was about to foreclose on the condominium unit owners who had not paid their

---

[2] "[O]ur court has applied different, but somewhat overlapping, elements of proof for § 523(a)(2)(A) actual fraud, as opposed to false pretenses/representation." In re Mercer, 246 F.3d 391, 403 (5th Cir. 2001).

assessments. Jacobson argues, unsuccessfully, that both findings were clearly erroneous.

The record well supports the first finding of the bankruptcy court, that in negotiating for the Letter Agreement and Modification Agreement, Jacobson represented that renovation of the condominium units would be finished in approximately four months with an additional loan of $400,000 to be made by Bank Dallas. Despite these representations, the record shows that in fact no measurable work was done on the twenty-three units Miller retained as collateral. Instead the proceeds from the Bank Dallas loan were used to pay off existing debts relating to the project, to pay other entities owned by Jacobson, and to finish the ten units on which Bank Dallas had liens.

Nor was the bankruptcy court's finding that Jacobson falsely represented that the homeowners' association had already voted and was about to begin foreclosure proceedings against condominium owners who had not paid their dues (to induce Miller to enter the Modification Agreement) clearly erroneous. No evidence of foreclosure proceedings was admitted at trial. The bankruptcy court's conclusion is supported by the testimony of Ken Morris, who worked for the homeowners' association and attended all meetings of the board of directors. Morris testified at trial that the board did not pass a resolution to start foreclosure proceedings or informally instruct that foreclosure proceedings should begin. Further, Morris testified that Jacobson's statement that "the officers of the association have been instructed to retain attorneys on Monday to proceed immediately with such foreclosures" was not accurate. Accordingly, the bankruptcy court did not clearly err in finding that Jacobson made these two false representations to obtain an extension, modification, or renewal.[3]

---

[3] Jacobson also asserts that Miller unjustifiably relied on these representations. We need not reach this issue as it was not presented to the district court. See Texas Commercial Energy v. TXU Energy, Inc., 413 F.3d 503, 510 (5th Cir. 2005) (acknowledging that arguments not brought before the district court are waived).

B. Contractual Defenses

Jacobson argues that the district court clearly erred in affirming the bankruptcy court's finding that there was no accord and satisfaction, release, compromise and settlement, novation, or purging of the false representations made by a later extension or renewal of the loan. The only affirmative defenses asserted by Jacobson were estoppel, release, and waiver. Jacobson contends that these defenses are supported by the terms of the Modification Agreement, but the bankruptcy court held that Jacobson made false representations to induce Miller to enter into the Modification Agreement.

As noted by the district court, Jacobson's contractual defenses do not shield him from liability for his tortious acts. See, e.g., Kucel v. Walter E. Heller & Co., 813 F.2d 67, 70 (5th Cir. 1987) (recognizing that accord and satisfaction is not a defense when the new, separate agreement was procured by false representations); see also Wright v. Sydow, 173 S.W. 534, 546 (Tex. App.–Houston [14th Dist.] 2004, pet. denied) (observing that a release can be avoided if secured by fraud). Indeed, even when a settlement agreement or release works "a kind of novation, . . . that fact does not bar the [creditor] from showing that the settlement debt arose out of 'false pretenses, a false representation, or actual fraud,' and consequently is nondischargeable." Archer v. Warner, 538 U.S. 314, 323 (2003) (quoting 11 U.S.C. § 523(a)(2)(A)). Further, a contractual waiver must be knowing and intentional to be valid. Citizens Nat'l Bank v. Allen Rae Invs., Inc., 142 S.W.3d 459, 475 (Tex. App.–Ft. Worth 2004, no pet.); Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co., 130 S.W.3d 181, 189-90 (Tex. App.–Houston [14th Dist.] 2003, pet. denied). The record supports the conclusion that there was no knowing and intentional release. Accordingly, the bankruptcy court did not clearly err.

C. Damages

Jacobson argues that the district court erred in affirming the bankruptcy court's determination of Jacobson's personal liability and the damages amount. We need not address this issue. Jacobson waived his arguments concerning personal liability and the amount of damages by failing to address them before the bankruptcy court.[4] See In re Quenzer, 19 F.3d 163, 164 (5th Cir. 1993) (recognizing that when an issue is not presented to the bankruptcy court it is not preserved for appeal). As acknowledged by the district court, in the final hearing before the bankruptcy court, Jacobson told the court he had no questions regarding the calculation of the damages.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[4] Jacobson raised these arguments for the first time in his appeal before the district court.