**CHICAGO, R. I. & G. RY. CO. v. WISDOM. (No. 9129.)**

(Court of Civil Appeals of Texas. Ft. Worth. June 28, 1919. On Motion for Rehearing, Nov. 1, 1919.)

1. CARRIERS ⬀303(8)—PERSONAL ASSISTANCE TO ALIGHTING PASSENGER.

Ordinarily a carrier is not burdened with the duty of extending personal assistance to a passenger alighting from a train.

2. CARRIERS ⬀303(8) — FAILURE TO ASSIST ALIGHTING PASSENGER.

Employés of a carrier were not negligent in failing to assist a healthy young woman, carrying a small traveling bag, to alight from a train, where she did not request assistance and the step was in good order, except that rubber covering was worn smooth.

3. EVIDENCE ⬀20(2)—JUDICIAL NOTICE.

Relative to duty of carrier to assist female passenger, it is a matter of common knowledge

---

⬀For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

that often women resent the laying of hands on their person under any pretense.

**4. APPEAL AND ERROR ☞1062(1)—HARMLESS ERROR; SUBMISSION OF ISSUES.**

Where two issues of negligence were submitted to the jury, one of which was improperly submitted, and the appellate court is unable to tell upon which issue a verdict rested, judgment for plaintiff must be reversed.

**5. CARRIERS ☞318(9)—INJURIES TO PASSENGER; EVIDENCE OF PROXIMATE CAUSE.**

In an action by a passenger who fell while alighting from a train, evidence *held* insufficient to sustain a finding that slippery condition of steps was proximate cause of fall.

**6. CARRIERS ☞318(9) — INJURY TO PASSENGER; CERTAINTY AS TO CAUSE.**

Where it was as reasonable to conclude from the evidence that a passenger fell while alighting by reason of her three-inch heel catching on the edge of the steps as that she slipped because of smooth condition of the steps, verdict in her favor cannot be sustained.

On Motion for Rehearing.

**7. EVIDENCE ☞6—JUDICIAL NOTICE; SHADOW CAST BY SUN.**

The court must judicially know that in August at 6 o'clock in the evening at Paradise, Tex., the sun cast a shadow on the east side of a train facing north, and on the steps on the east side of a coach.

**8. EVIDENCE ☞383(10)—PHOTOGRAPHS OUTWEIGHING TESTIMONY OF CONDITION OF CAR STEPS.**

In an action by a passenger for personal injuries from a fall while alighting from a train, testimony of a 17 year old boy, who stood some distance away, that the rubber on the steps of the coach from which plaintiff was alighting was entirely worn through, *held* not sufficient to raise a conflict or to warrant the jury in finding that the rubber was worn entirely through, where photographs were immediately taken which showed that, although the rubber was worn, it was not worn through.

**9. EVIDENCE ☞20(2)—JUDICIAL NOTICE.**

The court may judicially know that rubber on a car step merely worn smooth will not become "slick" from this cause alone, so as to invite a slipping of the foot.

**10. APPEAL AND ERROR ☞1001(1) — REVIEW OF QUESTION OF FACT.**

To sustain the verdict on appeal, the evidence must amount to something more than inferences, and must be legally of a probative force, mere detached statements of witnesses which may positively furnish an argumentative basis not being controlling, and a jury is not authorized to arbitrarily reject testimony that is unimpeachable and without suspicion.

Buck, J., dissenting.

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

Suit by Geneva Wisdom against the Chicago, Rock Island & Gulf Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

McMurray & Gettys and Lassiter & Harrison, of Ft. Worth, for appellant.

Carden, Starling, Carden, Hemphill & Wallace, of Dallas, for appellee.

CONNER, C. J. Appellee, Miss Geneva Wisdom, instituted this suit on the 29th day of November, 1916, to recover damages on account of an injury alleged to have occurred to her on August 2, 1916, while alighting from the defendant's train at Paradise, Tex. It was alleged that she was a passenger from Ft. Worth to Paradise, and that she slipped and fell while descending the car steps at Paradise, and that she was caused to fall by reason of the failure of the defendant's employés to take her traveling bag and carry it down the steps for her, and to take hold of her arm and assist her down the steps, and by reason of the fact that the steps on the car were old, worn out, and rickety, and slick and slippery, and not properly pitched.

The defendant pleaded a general denial, and averred that the plaintiff was guilty of contributory negligence, in that she was wearing slippers with extremely high heels, that were likely to turn under her feet and cause her to stumble and fall, and that in starting down the steps she so carelessly stepped as to bring about her fall; that if her handbag was so heavy that it endangered or interfered with her equilibrium as she walked out of the car that fact was known only to her, and that she was negligent in failing to set it down on the platform or to offer it to one of the three attendants present at the time, any one of whom would have received and carried it for her on the least indication that she desired assistance.

The trial resulted in a judgment in favor of the plaintiff for the sum of $1,400, and the defendant has duly appealed.

The assignments of error call for a determination of the sufficiency of the evidence to sustain the charge, verdict, and judgment, in appellee's favor. We have very carefully considered the evidence. It is too voluminous to justify our setting it out in full, and therefore we will undertake to state briefly its substance. The evidence is that on August 2, 1916, the appellee, together with her mother and sister, was a passenger on one of appellant's trains from Ft. Worth to Paradise, Tex.; that upon arrival of the train at Paradise appellee's mother and sister preceded her in alighting; that appellee emerged from the coach with a grip in her hand, which upon her turning upon the platform to descend the steps she took in both hands and held it out in front of her, and in this manner

she started to descend. As she passed out of the car door and onto the platform the auditor of the train was standing near by. She made no request of the auditor to take her grip or to assist her in descending, nor did the auditor speak to or in any way attempt to assist her. At the foot of the steps on either side stood the conductor and brakeman for the purpose of assisting passengers to alight. The plaintiff made no request of these employés of appellant for assistance, nor did they, until after her fall, as hereinafter stated, offer to assist her. As appellee stepped from the platform onto the first step of the car her foot in some manner slipped, or was caught, and she fell and was projected with her feet forward down the steps, and thus received the injuries for which she sued. Appellee at the time was wearing shoes or pumps of a fashionable make with heels about three inches high. The heel from one of these shoes was wrenched off, and found immediately after appellee's fall.

The evidence principally relied upon, and the only evidence cited in behalf of appellee in support of her allegations of negligence relating to the steps, is that of the witness Barnett and of S. R. Johnson, one of the brakemen on the train in question. Barnett testified in relation to the steps as follows:

"They were old steps, and the rubber on the steps was—there had in time been rubber on the steps, but they were all worn off, but around the edge or outside of the steps. The place you walk down, the center of the steps, was no rubber on. The surface of the step was worn until it was slick."

S. R. Johnson testified:

"This step in court resembles the step from which the plaintiff fell. On this step the rubber is worn off in places; worn some in the center; worn smooth; not none of them entirely smooth; there is a place right there that is smooth, in the center, where they step off."

This testimony is all that is quoted by appellee in support of the allegations of negligence referred to.

It was further proved that appellee at the time of her injury was 27 years of age; had been a teacher in public schools in various parts of the state for a number of years, and was an experienced traveler on trains. She testified that at the time her health was good, and in describing the immediate circumstances, among other things, said:

"My mother and sister were with me at the time. Mother got off first, my sister next, and I last. * * * In getting off I was walking in my ordinary manner, taking my time. I had a traveling bag with me. It was a medium size traveling bag. I had it up in both hands as I came down the aisle, and also had it in my hands when I came to the entrance. * * * When I started down I fell, fell down on the ground. I fell kind of sideways on this side, striking the steps, and I fell onto the step box, and then to the cement, or whatever you call it, the platform or ground. I fell awfully hard. No one caught me."

Cross-examined she said:

"When I came out of the car I had my grip in front of me; had both hands in the handhold of my grip, carrying it right in front of me. * * * Somebody was on the platform to my left as I started out. He did not touch me. I did not say a word to him, nor he to me. I have stated I was not positive whether I had stepped down on the first step when I fell or not. I do not know when the heel came off my slipper. It was off when I got to the ground. I do not know that my foot turned over. I do not know what caused me to fall. * * * I do not remember whether I saw a man at the bottom of the steps. I think there was one on either side. I have lots of times got on trains. I think I knew as well as anybody how to get on and off of a train."

The conductor of the train, among other things testified that he reported the accident to the claim agent at Ft. Worth, and on his return to that place was there met by the claim agent, who testified that he immediately took a photograph of the steps and ordered them detached, to the end that they might be exhibited as a demonstration of their condition. The photographs accompany the records in this case, and therefrom the rubber on the steps appear to be about in the condition described by the brakeman Johnson, whose testimony relating to this matter, as set out by appellee, we quoted, that is to say, the steps of the car appear to have been surfaced with rubber mats which originally were in a corrugated form, but which from use had been so worn as to reduce the corrugation in places to a smooth surface. The photographs, however, do not show that the rubber had been worn through at any place, and all of the testimony, except that of the witness Barnett, describes the steps about as we have attempted to describe the photograph.

[1] Viewing the testimony, as a whole, and in its most favorable aspect for appellee, we are unable to say that the evidence authorized the submission of the issue of negligence in a failure on the part of the servants and employés of the appellant to aid and assist plaintiff at the time in question. Ordinarily the carrier is not burdened with the duty of extending personal assistance to a passenger in alighting from a train. See Flory v. San Antonio Traction Co., 89 S. W. 278, in which is cited Railway Co. v. Buchanan, 31 Tex. Civ. App. 209, 72 S. W. 96. See, also, 2 Moore on Carriers, p. 1245, § 52. But appellee cites the cases of N. Tex. Traction Co. v. Danforth, 53 Tex. Civ. App. 419, 116 S. W. 147; T. & P. Ry. Co. v. Miller, 79 Tex. 78, 15 S. W. 264, 11 L. R. A. 395, 23 Am. St. Rep. 308; Flory v. San Antonio Traction Co., 89 S. W. 278; M., K. & T. Ry. Co. v. Buchanan, 31 Tex. Civ.

App. 209, 72 S. W. 96; Campbell v. Alston, 23 S. W. 33. These cases, however, we think, are plainly distinguishable from the one before us. In the case of N. Tex. Traction Co. v. Danforth, supra, which we will notice as illustrative of the others, the court held that the evidence supported the following allegations of the plaintiff's petition:

"That on the 20th day of May, 1906, about 9 o'clock a. m., plaintiff's wife, Lula C. Danforth, with her baby in arms, became a passenger on the defendant's interurban car No. 11, at its Tenth street station in Oak Cliff, and paid her fare to the conductor of the car, to be carried to Ft. Worth to visit her friend, Mrs. Elizabeth Derozier. When said car stopped in response to her signal at the intersection of Main and Weatherford streets in Ft. Worth for her to alight, and while she, with her 17 months old baby in her arms, and in the exercise of the greatest care and prudence to safely alight, was stepping from the rear platform to the step, from which she would alight to the street, her feet slipped from the step of the car, and threw her with great violence and force down upon the street and backward against said step. That her feet slipped from the step of the car because of the step being worn, making the board thinner and slanting and slippery, and because of slippery mud having accumulated and being on said step, and because said step was defectively constructed, in that it was too steep, and without sufficient projection, and was all the more dangerous, being thus defectively constructed, and the more liable to cause a passenger to slip and fall in stepping from the platform to this worn, muddy, and slippery step. That at the time plaintiff's wife, with her baby in her arms, was leaving the car, and while she was attempting to step from its rear platform to the street, the defendant's conductor, who knew of the condition of said step, and which was not known to plaintiff's wife, was standing idle and unoccupied on the rear platform of the car, leaning against the platform rail, and said plaintiff's wife, with her infant baby in her arms, attempting to get off the car, and said conductor well knowing that plaintiff's wife needed assistance and warning on account of said condition of said step of the car, yet he remained in his position aforesaid on the rear platform of the car, and failed and refused to assist her to alight therefrom, or even to warn her of the dangerous condition of said step, but remained idle and silent, and made no effort to assist her, or to inform her of the dangerous and perilous position she would be subjected to in using said step in alighting from the car."

[2] It is evident, we think, that the circumstances shown in the Danforth Case were very different from those shown in the case before us. In the Danforth Case, Mrs. Danforth had in her arms a 17 months old baby, and exercised the greatest care and prudence to safely alight. The step was worn, making it both thinner and slanting, and slippery because of slippery mud having accumulated on the step, and because the step was defectively constructed, in that it was too steep

and without sufficient projection. The conductor knew of the condition of the step, which was not known to the plaintiff's wife, and stood by, idly and unoccupied, without making any effort to assist Mrs. Danforth in alighting. But here the appellee is a young woman, experienced in traveling, and carrying only an ordinary grip, which she herself testified was not very heavy, and without request undertook on a pair of high heel slippers to descend the steps. The necessity for assistance certainly did not occur to the appellee at the time with any great force, otherwise it seems but natural that she would have requested assistance. What was there in the appearance of things or within the knowledge of the employés of appellant that amounts to a failure to exercise due care to assist the appellee? The time was in August; there is no pretense that the steps were muddy, or that the boards were worn thin, or that they did not sufficiently project, or that they were not wide enough, or improperly slanted. All other passengers, both ladies and gentlemen, had just descended safely and without complaint. Admitting the steps to have been in the condition described by the witness Barnett, which undoubtedly is in opposition to the great weight of the evidence, and that the servants of the appellant knew of such condition, we think it can hardly be said that the condition of the steps alone called upon said servants, under all of the other circumstances, to go beyond what they did do at the time. The conductor and brakeman were at the foot of the steps for the purpose of assisting; they attempted to do so immediately upon appellee's fall; the auditor on the platform was not called upon; appellee, by the exercise of any care, would certainly have seen the steps and have availed herself of the supporting rods on the side.

[3] It is a matter of common knowledge that often ladies resent the laying of hands on their person under any pretense, so that on the whole we cannot think that the evidence supported or authorized the submission of the issue of negligence just discussed, nor does it authorize, in our judgment, a recovery upon this ground.

[4-6] The conclusion just noted would, of course, and at all events, require a reversal of the judgment, inasmuch as we have no way to determine upon which of the two issues of negligence submitted in the case the jury based their verdict, but we have been unable to avoid the conclusion that neither the charge, verdict nor judgment can be supported upon the issue of negligence relating to the condition of the steps, for if it be admitted that the steps were in the condition described by the witness Barnett, it cannot be said from the evidence that this condition was the proximate cause of plaintiff's fall. While several of the witnesses testified that

the plaintiff "slipped and fell," yet we think the evidence makes it apparent that this expression is as reasonably referable to the fact that her heel caught on the edge of the step as she was attempting to descend from the first to the second step as to the fact that she slipped because of the condition of the step. Witnesses who testified that plaintiff slipped were at varying distances from the platform. None of them, as we interpret the evidence, testified that the appellee slipped before her heel caught on the step. It seems that no one knew just how that happened, and she said, as already quoted, that she did not know when the heel of her slipper came off, or whether her foot turned, or what caused her fall. One witness Gifford Steele, called as a witness on behalf of the plaintiff, testified on this point as follows:

"As she (appellee) stepped on the platform he (the auditor) did not assist her in any way. She just slipped and fell; she just started down the steps, and as she started to pass her foot to the second step, I believe it was, just slipped, she just fell backward, just slipped on down, fell backward to the step."

This testimony, and we find no other as closely pertinent, tends to show that she had safely descended to the first step, and that probably as she attempted to pass the foot from which the heel of her shoe had been wrenched to the second step she failed to project her foot sufficiently far, and hence the heel of her shoe caught on the edge of the step, and caused her to slip and fall backward. It is not necessary that we conclude that this is the way the accident actually happened, it is only necessary to state that this theory is as reasonably supported by the evidence as any other, and we certainly think that the evidence shows that it is. For, as we had occasion to say in the case of Railway Co. v. Davis, 161 S. W. 932, writ of error refused:

"The rule undoubtedly is that, where the testimony shows that an accident is as reasonably attributable to a nonactionable cause as to one that is, the law will not uphold a conclusion in the nature of a mere guess in favor of the latter."

It cannot be said, therefore, that the condition of the steps, even if not in proper condition, was the proximate cause of plaintiff's fall, and this fact is as essential to the appellee's right of recovery as is the establishment of negligence on appellant's part in respect to the steps.

We cannot therefore but conclude, as before stated, that the evidence in this case wholly fails to support either the charge, verdict, or judgment in appellee's favor, and the judgment must therefore be reversed and here rendered for appellant.

Reversed and rendered.

### On Motion for Rehearing.

Appellee has presented a forceful motion for a rehearing herein, and has convinced our Associate Mr. Justice Buck that the evidence does not support the conclusion reached by the full court, as expressed in our original opinion, his view being fully and ably presented in his dissenting opinion herewith filed. The majority, however, after again carefully reviewing the record, feel unable to reverse the views of the evidence originally stated.

To what was originally stated we add that the appellee, her sister and mother were accompanied by two grips and in the description of the grips there are detached portions of the evidence from which it is possible to infer that the appellee at the time of her fall had a large and heavy grip, but when the whole evidence on the subject is carefully considered, it is perfectly plain, we think, that the particular grip that appellee was carrying in her hand at the time was the smaller and lighter one. S. R. Johnson, one of the train operatives, who was at the foot of the steps, testified that "she (the plaintiff) had a small, ordinary hand bag in her hand." The plaintiff herself testified, as set out in the original opinion:

"I had a traveling bag with me, it was a medium size traveling bag. I had it up in both hands as I came down the aisle, and also had it up in my hands when I came to the entrance."

There was nothing, therefore, in the size of the grip to call for assistance.

Some stress is laid upon the testimony that the brakeman assisted other lady passengers to alight. Johnson, the brakeman, testified that, as the appellee began to descend the steps "just immediately before she fell," he was "trying to take her baggage, * * * was reaching with my hand, and just as I touched the bottom of the baggage her shoe heel gave away, and I caught her in both arms as she came down," etc.

[7-9] It will be recalled that the plaintiff herself testified that she made no request for assistance, nor does it appear that the assistance rendered by the train employés to other ladies was other or different than that offered to appellee. It is not reasonable to expect or require, in the absence of some circumstance showing a necessity therefor, that the train employés should take the arm of a passenger and with her descend the steps in order to guard against an accident such as happened in this instance. Much stress is laid upon the testimony of O. G. Barnett. He testified that he would be 20 years old in July following the date of the trial, which was on the 24th day of June, 1918; that he was engaged in running a service car, and was at the depot on the occasion in question; that "there was a pretty good bunch of people down there; * * *

that the train came from Ft. Worth and was going north, getting there in the evening 6:30, I believe; * * * that the passengers get off the train on the east side—the right-hand side from Ft. Worth. I saw her as she was coming out of the car on to the platform. She had a kind of suit case—I was not certain; it was a suit case of some kind. * * * I did not measure the distance Miss Wisdom moved in falling, I do not know, just have to kind of guess it at about 4 or 4½ feet, I judge. Q. Did she complain any at the time? A. Well I never did—there was a big crowd there, I never did hear any one say." On cross-examination he said that when the accident happened he was standing somewhat near a semaphore. "Q. What direction is that from where Miss Wisdom came out of the car? A. Well, she was about—I judge the car stopped something like 4 or 5 feet from the semaphore, two or three feet. I was looking kind of sideways when I saw her kind of south. * * * I am not positive which heel it was that caught." It therefore appears that at the time of the accident the witness Barnett was a boy about 17 years old; that he was not standing immediately in front of the car steps, and evidently not a member of the crowd standing just before them; that on the contrary he was standing and facing in an oblique direction from the steps, and we must judicially know that in August at 6 o'clock in the evening the sun cast a shadow on the east side of the train and on the east side of the steps, and when this witness testified that the rubber was all worn off of the steps save around the edges, and that the steps were slick in the middle, and that the appellee first slipped and then her heel caught on the edge of the step was but stating conclusions rather than definite facts certainly known to him; for of all the persons who were present, including the appellee's mother and sister and appellee herself, none save Barnett testified that the rubber was all worn off of the steps. The evidence as a whole conclusively establishes, in the opinion of the majority, that while the rubber on the steps had been worn smooth in places it had not been worn through in any place, and this conclusion is verified by the photographs which accompanied the transcript. It has been suggested that the jury were not bound to believe this testimony, but the testimony was uncontradicted to the effect that immediately upon the train reaching Ft. Worth the steps in question were detached, photographs taken thereof, and photographs exhibited to the jury and here as stated. No attempt was made whatever to contradict these witnesses, and we know of no just theory upon which we can reject the conclusion to which all this testimony leads. We think we may also judicially know that rubber merely worn smooth will not become "slick" from this cause alone so as to invite a slipping of the foot, and, interpreting the evidence as a whole, we cannot avoid the conclusion that the expression of those witnesses who stated that the steps were "slick" was merely, by that form of expression, intended to convey the idea that the rubber had been worn "smooth."

[10] We well understand the rule that the jury are the exclusive judges of the credibility of the witnesses and the weight to be given to their testimony, and that it is our duty to affirm a verdict and judgment if there is any evidence of probative force to sustain the verdict, but to sustain the verdict the evidence must amount to something more than inferences; it must be legally of a probative force; mere detached statements of witnesses which may positively furnish an argumentative basis are not controlling, nor do we understand that a jury is authorized to arbitrarily reject testimony that is unimpeached and without suspicion. See Grand Fraternity v. Melton, 102 Tex. 399, 117 S. W. 788.

We will not undertake to here analyze the numerous decisions on the subject, but we will cite a few of them which very certainly illustrate the fact that it is not every state of evidence which has satisfied a trial jury and court that will, on appeal, authorize an affirmance of the verdict and judgment. Joske v. Irvine, 91 Tex. 582, 44 S. W. 1059; Texas Loan Agency v. Fleming, 92 Tex. 458, 49 S. W. 1039, 44 L. R. A. 279; M., K. & T. Ry. Co. v. Malone, 102 Tex. 269, 115 S. W. 1158; Snipes v. Bomar Cotton Oil Co., 106 Tex. 181, 161 S. W. 1; Ft. Worth B. Ry. Co. v. Jones, 106 Tex. 345, 166 S. W. 1130; T. & P. Ry. Co. v. Shoemaker, 98 Tex. 456, 84 S. W. 1049; G., C. & S. F. Ry. Co. v. Davis, 161 S. W. 932, writ denied; S. L. & S. F. Ry. Co. v. West, 174 S. W. 287, writ denied; Ft. Worth & R. G. Ry. Co. v. McMurray, 173 S. W. 929, writ denied; Medlin Milling Co. v. Mims, 173 S. W. 968, writ denied; H. & T. C. Ry. Co. v. Schmidt, 61 Tex. 282.

We conclude that it is not only our duty, but in the real interest of the appellee herself, that we adhere to the conclusions originally expressed. If in fact the evidence is insufficient to sustain the verdict, as the majority think, it is better for all that the fact be now accepted rather than to wait for acceptance through continued and costly litigation. It is ordered that the motion for rehearing be overruled.

BUCK, J. (dissenting). It is with some reluctance that the writer dissents from the conclusion reached by his Associates that the motion for rehearing presented by appellees should be overruled. On the original consideration, he was in doubt as to the correctness of the conclusion of the majority that the judgment below should be reversed, and judgment here rendered for appellant. This

doubt has ripened into a conviction that we were in error in so deciding.

Plaintiff alleged two grounds of negligence on the part of defendant which have some support in the evidence, to wit:

(1) That three of defendant's employés were present, one at the top of the steps and two at the bottom, as she was leaving the coach, carrying a traveling bag "which was heavy and cumbersome," and that it was, under the circumstances, the duty of said employés of defendant to relieve plaintiff of said baggage and to take hold of her arm and to assist her to safely alight. That plaintiff had traveled on defendant's train many times theretofore, and that it had been the custom and practice of such employés to assist ladies, especially those with baggage, to alight, by taking the baggage and by taking hold of the lady passenger's arm. That she fully expected them to do so in the instant case, and thought they acted as if they were going to do so, they did nothing to assist plaintiff to alight.

(2) That the steps leading from the car were old and rickety, "slick and slippery," not level or properly pitched, etc., and that said agents and employés of defendant knew or were charged with knowledge of said defective condition of the steps, and that under the circumstances they should have assisted plaintiff to alight.

The evidence does show that when the plaintiff emerged from the coach in which she had been riding that one of the trainmen was at the entrance of the door out on the platform. Plaintiff testified:

"In getting off I was walking in my usual manner, taking my time. * * * One of the trainmen was standing there—I do not know whether the auditor or conductor. He was standing just to the left of me. He was standing on the platform of the train. * * * I did not say anything to him when I passed, nor did he to me. He did not take hold of me nor my baggage, nor did he touch me. When I started down I fell, fell down on the ground."

S. R. Johnson, witness for defendant, testified that he was a brakeman on the train, and that when the train stopped he was standing just south of the steps, possibly a little in front. He further testified:

"I saw the other ladies that came out just ahead of Miss Wisdom. I assisted them all off. When Miss Wisdom came down the car (steps?), just immediately before she fell, I was trying to take her (baggage?). She had a small, ordinary hand bag in her hand, and I was reaching with this hand, and just as I touched the bottom of the bag her shoe heel gave away, just let the bag go, and I caught her in both arms as she came down, and broke the fall as best I could. * * * This step in court resembles the step from which the plaintiff fell. On this step the rubber is worn in places, worn some in the center, worn smooth, not none of them entirely smooth. There is a place right there that is smooth, in the center, where they step off."

O. G. Barnett testified that he lived at Paradise and was running a service car; that he was at the depot when the train stopped. He testified:

"I first saw this young lady as she was coming out of the coach off onto the platform. * * * I saw only the 'brakie' and the conductor. The conductor was upon the platform. * * * The man on the platform was standing there; was not doing anything; kind of waiting for the passengers to get out. When Miss Wisdom got to the platform she started down the first step. Her foot slipped forward, and her heel pulled off, and she slid down the steps. * * * She slipped from the first step, the top step, the next step from the platform. The platform is level with the floor of the car, and when she stepped on the first step her foot kind of slipped forward. I saw the condition for those steps. They were old steps, and the rubber on the steps was—there had been in time rubber on the steps, but they were all worn off, but around the edge or outside of the steps, the place you walk down, the center of the steps, was no rubber on. The surface of the step was worn until it was slick. * * * I am not positive which heel it was that caught. It was caught on the edge of the step, the first step. Her heel caught that way (pantomine). It pulled the heel off; tolerably high heel shoe, and it slipped. Q. Wasn't it a very high heel shoe? A. Nothing more than girls around home wear. Her foot slipped off that way, and the heel came off. Q. That is what made her fall, that heel coming off? A. No, sir. If the heel hadn't come off she would have been out on her head. Q. You know that? A. Sure. Q. You were watching, you knew she was going to do that? A. No; I didn't know she would do that. That heel came off; her foot slipped out from under her. She was standing in a position if the heel hadn't come off she would have went over. * * * There was no rubber on that step she slipped off on; was no rubber on the edge, on the outer side, next to the wall, where it had been worn off through the center. * * * On each side there was a little rubber next to the wall, but in the middle there was no rubber at all."

He further testified that W. N. Harris (not one of the trainmen) grabbed the plaintiff when she fell, ran and grabbed her, and that he never saw the brakeman grab her. He testified that plaintiff's suit case was about 2 feet long.

The plaintiff testified that she thought there were two trainmen on the depot platform at the bottom of the steps, one at each side.

Gifford Steele, witness for plaintiff, testified that he had lived near Paradise all his life; that he was down at the depot that day. His testimony, in part, is as follows:

"When I first saw Miss Wisdom that day she had just started down the steps, started to get off the train and her foot slipped, and she fell. * * * She had a traveling bag, had it in front of her. * * * The auditor did not take hold of this lady's traveling baggage. As she stepped on the platform he did not assist her in any way. She slipped and fell. She just fell backward to the steps. Her back hit the

step, and her feet went down in front of her. I could not tell how hard she fell. Looked like a pretty hard fall. They caught her before she fell lengthways on the platform. The parties that caught her were on the platform of the depot. * * * The first thing I saw; her feet slipped from under her, and she fell in a sitting position on the steps and bumped on down. * * * She had some kind of traveling bag. * * * She had it in front of her."

H. C. Richberg, who lived at Paradise, testified that he was just ahead of Miss Wisdom in getting off the train. He testified:

"My recollection is that the conductor was standing to my left on the platform as I came out. I saw her start down the steps of the car. I suppose her feet slipped from under her. * * * I came down those same steps. * * * I noticed they were old steps. They were worn some. I think there was rubber on them. * * * They were worn sort of smooth across by constant use. * * * There was rubber on that step but it was worn and old, worn slick."

R. J. Stewart, witness for defendant, testified that he was the conductor in charge of the train that day in place of Tobe Goodman, the regular conductor; that the auditor, D. E. Scofield, was up on the platform of the car, and the brakeman Johnson was standing on the depot platform, Johnson on the south side of the steps and the witness on the north side; that when plaintiff fell witness was standing at the bottom of the steps; that "her feet slid out from under; fell with her feet towards me; right between me and the brakeman." Scofield testified that he saw plaintiff when she fell; that "just before she fell her feet slipped. When she stepped out of the car I put my hand right on her arm to assist her as she passed by. When she fell I grabbed at her, and could not reach her body but put my hand on her head as she slipped down. * * * I examined the steps just after she fell, before we moved. I did not see any defect in them. There was no defect in the rubber that I could see."

Enough of the evidence has been noted, in the writer's opinion, to show that there was at least some evidence tending to establish:

(1) That three trainmen were present at the time and place of the accident in position to have relieved the plaintiff of her baggage and to have otherwise assisted her in alighting from the car. That not one of them did render any assistance.

(2) That the trainmen were accustomed to render such assistance, and in fact did so this day and as to this coach assist the other ladies in alighting.

(3) That the steps were old and defective, with the rubber thereon worn slick, at least as to the top step from which plaintiff fell.

(4) That plaintiff's foot slipped from under her because of the worn surface of the top step, and that her heel caught, after she slipped on the edge of the step. That one of the inducing causes of the injury was the worn condition of the rubber covering to the steps.

The jury were not bound to believe that the steps exhibited in court were the same steps that were attached to the car at the time of the accident, and down which the plaintiff fell. The jury were authorized in finding that in the exercise of that high degree of care due a passenger, defendant's employés were negligent in using steps in the worn and defective condition, as above noted.

(5) The evidence further justifies a finding that the trainmen were negligent, taking into consideration the worn condition of the steps, which condition was open and patent to them, and the fact that plaintiff was incumbered with a traveling bag, or grip, which on account of its size and cumbersomeness she was having to carry in front of her, in not relieving the plaintiff of the baggage and in not otherwise assisting her to alight.

It is true that the failure to assist a female passenger to alight from a train is not per se negligence, but the circumstances, surrounding the transaction may tend to show the propriety of such assistance and the duty upon the employés of the carrier to render it. Railway Co. v. McCullough, 18 Tex. Civ. App. 534, 45 S. W. 324; Traction Co. v. Flory, 45 Tex. Civ. App. 233, 100 S. W. 200; Railway Co. v. Buchanan, 31 Tex. Civ. App. 209, 72 S. W. 96; Walker v. Quincy, O. & K. C. Ry. Co. (Mo.) 178 S. W. 108, 10 N. C. C. A. 516; Ga. & Fla. Ry. Co. v. Thigpen, 141 Ga. 90, 80 S. E. 626, 4 N. C. C. A. 457.

The question as to whether it is negligence on the part of the employés of the railway company to fail to assist a passenger to alight from a train is largely one for the jury. Traction Co. v. Flory, supra; T. & P. Ry. Co. v. Miller, 79 Tex. 78–84, 15 S. W. 264, 11 L. R. A. 395, 23 Am. St. Rep. 308. If there are any conditions such as old age or physical infirmities on the part of the passenger, or being incumbered with heavy baggage, or the defective condition of the place and means of disembarkation, including the condition of the landing place, neither would the trial court nor an appellate court be justified in depriving the litigant of the right to have a jury pass upon the question as to whether the carrier was negligent in failing to render assistance to the passenger under such circumstances. Railway Co. v. Finley 79 Tex. 85, 15 S. W. 266; I. & G. N. Ry. Co. v. Williams, 183 S. W. 1185.

As was said in Ft. Worth & D. C. Ry. Co. v. Spear, 107 S. W. 613, 615:

"We do not think it can be said as a matter of law that the failure of a carrier to assist a female passenger to alight from a train is negligence. Whether it would be negligence or not in a given case would depend upon whether fur-

nishing such assistance was or was not within the bounds of its duty to exercise the high degree of care imposed upon it to secure the safety of its passengers."

In speaking of this duty, Hutchinson on Carriers, § 617a, p. 73, says:

"But the duty may be imposed where the passenger is known to be so sick, aged, or infirm as to need assistance in alighting safely, and certainly where the passenger is called upon to alight away from the station or at a dangerous and unusual place. Where conveniences for that purpose have not been provided, the carrier owes to the passenger the duty to see that he has such assistance as is reasonably necessary to enable him to alight in safety. As is said in a late case, 'the contract of a railroad company with its passenger does not terminate until he has alighted from the cars.'"

The fact that evidence was introduced by defendant to show that the steps used were not worn smooth or slick, and that the baggage carried by plaintiff was not large or heavy, and that her fall was caused, not by the defective condition of the steps, but through the plaintiff's contributory negligence in wearing high heel shoes or in not noticing how and where she was placing her foot, does not, in the opinion of the writer, justify this court in reversing and rendering the judgment. All these matters were before the jury and the trial court, and they were in better position to pass upon the weight of the conflicting testimony than this court. Even if it could be truthfully said that the great preponderance of the evidence exculpates defendant from any negligence in the respects charged. yet in the face of some evidence of a probative force tending to establish the existence of facts rendering it the duty of defendant's employés to assist plaintiff to alight, this court's duty would be to reverse and remand rather than to reverse and render. Hence the writer dissents from the conclusion reached by the majority on appellee's motion for rehearing.